## State *vs.* Nahum Trask.

WINDSOR,
*February,*
1834.

State
*vs.*
Trask.

If there be a repugnancy or inconsistency in a deed, yet if the intent be clear, the court will reject the repugnancy, and give effect to the deed according to the intent.

If a deed be executed to A and B, for the use of a county, for the purpose of a court-house, with a power to convey to the county, no conveyance by them is necessary to give the public an interest in the land; but

If the land be laid out as a public common, and the public acquire an interest in it as such, it is dedicated to public use, and cannot be reclaimed, even if the use of the court-house be discontinued.

To render a dedication valid and binding, it is necessary that there be an acceptance and occupation by the public; and this acceptance may be partial.

When a part of the land contained in such a deed has never been used by the public, but has been for many years occupied by the owner for private use, such occupancy is evidence that the public claim is waived.

Where the public right rests upon usage, it can be no more extensive than the usage itself. And evidence of private occupancy is admissible, to disprove or qualify the usage.

On the trial of this cause, the counsel for the state gave in evidence to the jury a copy of a deed from Jacob Hastings to Jonathan Stone, Benjamin Wait and Stephen Jacobs, of the following tenor, viz:

" Know all men by these presents, that I, Jacob Hastings, of Windsor, in the county of Windsor and state of Vermont, husbandman, in consideration of the advantages that may thereby accrue to the said county of Windsor, *and the town of Windsor* IN PARTICULAR, and in the further consideration of five shillings to me in hand paid to my full content and satisfaction, by Nathan Stone, Benjamin Wait, and Stephen Jacob, Esquires, each of Windsor aforesaid, in behalf of themselves and the other persons whose names are entered on the back of this conveyance, being the subscribers for raising a sum to be laid out in building a court house on the piece or parcel of land in this conveyance particularly described, to wit, those whose names are hereon endorsed, with the sums by them severally subscribed are given, or to be given, thereunto annexed, for the purpose of erecting the building aforesaid—have given, granted, bargained and sold, and do by these presents give, grant, bargain, sell, alien, release, convey and confirm, to them, Nathan Stone, Benjamin Wait and Stephen Jacob, in behalf of themselves and the subscribers above referred to, to their proper use, benefit and behoof, to be occupied and improved for the purpose aforesaid, and to their heirs and assigns—Provided, and it is the true intent and meaning of these presents, that the said committee be empowered to convey the same premises with the appurtenances to the county of Windsor, or their trustees, for the purpose and to be solely improved by them as a yard or green for the state and county buildings, and

WINDSOR,
February,
1834.

State
vs.
Trask.

in particular a court house, which is now building by the above-mentioned subscribers, the dimensions of which are fifty feet by thirty-four feet, with twenty feet posts—all that tract or parcel of land, lying and being in the town of Windsor above-mentioned, on the north side of the highway running from the north road, so called, to the west society in said town, nearly north of Mr. Fuller's barn—beginning at a stake and stones on the north line of the highway opposite Mr. Fuller's barn, near the top of the hill, thence running westerly eighteen rods to a stake and stones, thence running northerly ten rods to a stake and stones, thence southerly ten rods to first mentioned boundary, containing in the whole one acre, be the same more or less: To have and to hold the above granted premises with the appurtenances, to them the said Nathan Stone, Benjamin Wait and Stephen Jacob, in trust to thmselves and the subscribers above referred to, and each of their heirs and assigns forever.

Provided, and it is hereby intended, that the said premises shall be to the sole purpose aforesaid, and if not accepted by the county for that purpose, to be and remain in the custody of the subscribers for their mutual benefit in proportion to the sums by them contributed for the purpose aforesaid—I hereby engaging that I am possessed of the same in fee simple, and have good right and full power to convey the same as above-mentioned, and that I will warrant and defend the same agreeable to the true intent and meaning of the above instrument.

In witness whereof I have hereunto set my hand and seal, this twentieth day of April, Anno Domini, 1784.

JACOB HASTINGS. {L. S.}

. Signed, sealed and delivered in presence of

ELKANAH SPRAGUE, Jr.
MOSES EVANS.

Said deed was duly acknowledged and recorded.

It was admitted that the house mentioned in the indictment stood on the land contained in said deed.

The counsel for the respondent gave evidence tending to prove, that before the years 1789 and 1791, a blacksmith shop was erected on the easterly side of the public common, east of where the said house stood, though partly on the same ground, and that, in the year 1791, the said shop was moved about six feet towards the west, and converted into a dwelling-house, and that it had been ever since, until the presenting the indictment, occupied as a dwelling-house; and that in 1814, the respondent purchased it. And from that time to the time of presenting the indictment, occupied it, by his tenants, as a dwelling-house.

WINDSOR,
*February,*
1834.

State
*vs.*
Trask.

The respondent also gave evidence tending to prove, that the erection and continuance of the said house did never impede or prevent the public from using the said premises for the purposes of a public highway to and from the door of the court-house, and that the land whereon said house stood, had not said house been erected, was less convenient than other parts of said common used for said purposes of highway and common.

The respondent gave in evidence copies of deeds purporting to convey a title to the *locus in quo*, from Robert Grandy, through several intermediate conveyances to himself.*

It was admitted that possession had accompanied said deeds, and that the state courts were removed from Windsor in the year 1796, and that the legislature sat for the last time in Windsor in 1804, and in 1808 the sessions of the legislature were permanently fixed at Montpelier, and that the United States courts have been held in the court-house on said land since the year 1791.

On the trial, the counsel for the respondent contended, and requested the court to charge the jury,

1. That under the Hastings deed the legal estate in the land conveyed thereby, became vested in the grantees and their heirs; and that under said deed the public, if they acquired any right, acquired the right only to the use of said land for the sole purposes mentioned in said deed; and that when the state courts and legislature ceased to hold their sessions in said court-house, the rights of the public, under said deed, ceased.

2. That the public, at the time of presenting of said indictment, had no rights except such as were acquired by use; and that, never having used the land whereon the said house was erected, they have no right now to use the same for a common or highway.

3. That the grantees in said deed, after the public uses in said deed had ceased, had as against the public the right to make use of said lands for their own benefit, in whole or in part, as they should think proper; and that it was to be presumed, in law, that the lease mentioned in said deed was given by those who had a right to give it, to wit, by the grantees of said Hastings; and that said lease was a resumption of their right to the occupancy of the land covered by said house, and a withdrawing of the same from the public use; and that the said gran-

---

* This deed from Grandy described the premises as being contained in a lease to him for ten years, but it did not appear by whom the lease was given.

WINDSOR,
*February,*
1834.

State
*vs.*
Trask.

tees alone could question the right of the respondent to continue said house on said premises.

4. That such lease, and the occupation under it, was adverse to the right of the public, and their unquestioned possession, and the acquiescence of the public, from 1791 to 1831, forty years, was a bar to all claim.

5. That if said possession was not adverse, there should have been notice to the respondent to remove the building, before indictment found.

6. That the fee of the land described in said Hastings' deed was ever continued in the said trustees, and that they had a right to use the same, or any part, for any purpose that would not impede the public in the use of the same as a common or highway; and that the erection and continuance of the house must be shewn to be an impediment to the public use of the land as a common or highway, which in this case the respondent contended was disproved.

7. That the public never acquired any rights under said deed.

8. That on the whole evidence given in the case, the respondent was entitled, in law, to verdict of acquittal.

But the court refused so to instruct the jury; but did instruct them, among other things, that the deed from Hastings to Stone, Wait and Jacobs, created in them a trust for themselves and said subscribers named, to hold for a public common; and that as it yet remained a public common, and the court-house yet used for the United States courts to hold their sessions, and divers houses were erected fronting upon this common, it could not cease to be a common without great injury to those who had regulated their interest by treating it as a public common, while it had thus long continued to be such common.—That if they found the respondent had no title to the premises, it furnished him no defence that the common was so large that the public could be accommodated without the part where the house stood, or that the public in their ordinary travel to and from the court-house, did not travel and need not travel across the place where the house stood;—while it was a public common, no individual had a right to use it in a way inconsistent with the use of the rest of the public.—That the only ground on which the respondent could be justified in continuing the nuisance complained of, was a right acquired by adverse posses-

WINDSOR,
February,
1834.

State
vs.
Trask.

sion.—That it appears not to be now known what were the terms of the ten years' lease, nor who executed the same.— But it must be presumed that at the expiration of the ten years the premises would revert to the lessor, and a continuance of a possession by the lessee, or their assigns, by suffrance merely, would not be so adverse as to create a title in the possessors, unless they set up some claim to hold adversely, or to hold in their own right.—That they would notice the several conveyances under which the respondent claims, and the boundaries of the premises therein described, speaking of the house, but not of the land under the house.—That the statute of limitations did not apply to bar the public of their right of common ; but the possession, if adverse, had been sufficiently long to warrant a presumption of a grant or conveyance to the respondent, or those under whom he claims; but if the possession was not adverse, and they were not claiming in their own right, against all the world, the respondent would not be justified in his continuance of the nuisance ; so that the only question of fact for them to decide, was whether the possession was adverse in the sense above described.

The jury having found the respondent guilty, he excepted to the decisions of the court and their charge and refusal to charge. Exceptions were allowed, and the cause passed to this court for revision.

*Aiken for respondents.*—The counsel for the state, for title to the *locus in quo*, relies on the deed from Hastings to Stone, Wait and Jacobs.

For the respondent, it is contended, that this deed never created any rights in the public.

1. The grantor, Hastings, if he intended to grant *directly* by this deed, any right of use to the public, attempted to limit an use upon an use—which, at law, cannot be done.—1 Cruise Dig. page 303, sec. 4.

2. The *use* is first given to the subscribers; and any subsequent clause in the deed, granting the same use to another, is void for repugnancy.—2 Bl. Com. 384.

3. The true construction of this deed seems to be, that Stone, Wait and Jacobs took the legal estate as trustees, to hold to the use of those who subscribed for building the court-house, with power, by deed, to divest the subscribers of that use, and vest it in the county of Windsor, for such period as the county should

WINDSOR,
February,
1834.

State
vs.
Trask.

exercise the use for the purposes " of the state and county build-ings, and in particular a court-house." And that whenever the county should cease to use the property for these specified pur-poses, the use would revest, and become revested in the gran-tees.

The public must have had the right of use at the time of in-dictment found, and in order to derive such right from this deed, it was necessary,

1st, That Stone, Wait and Jacob should have made such a conveyance of the use, by deed, as they were empowered by their deed to make—otherwise the title would have remained in them.

2d, That there should have been a continued and uninter-rupted use, by the county, under such conveyance, for the sole purposes specified, down to the pending of the indictment. Neither of which does the case shew.

The fact that the United States courts have been holden in the court-house, is not material in the case. This subject was not contemplated by the grantor, Hastings, and was not the ob-ject of the grant: the grant was not to that use.

That " divers houses were erected fronting on this common," as mentioned in the charge to the jury, was no part of the case, and ought not to have been suggested by the judge.

The length of time the respondent, and those under whom he claims, have been in possession, should quiet the respon-dent's possession.—*University of Vermont* vs. *Reynolds*, 3 Vt. Rep. 543.

The possession under the lease mentioned, was adverse to the public; and that possession has ever continued in the oc-cupants of the house complained of as the nuisance.

*Coolidge for the prosecution contended*—1. That the deed from Jacob Hastings to Nathan Stone and others was a grant, or dedication, of the premises for *public* uses.

(1) It recites, as the principal consideration, the advantages to accrue to the town of Windsor *in particular*.

(2) It conveys the estate to certain persons associated to build a court house—" to be occupied and improved for the purpose aforesaid"—i. e. " as a yard or green for the state and county buildings, and *in particular* a court house which is now in building."

(3) To more perfectly accomplish the purpose contemplated, the grantees, or donees, of the legal estate, were empowered to convey the premises over to the county, to be improved as a yard, &c. as aforesaid.

WINDSOR,
February,
1834.

State
vs.
Trask.

(4) The *habendum* is to hold in trust under the express terms, " that the said premises shall be to the sole purpose aforesaid ;" and

(5) " If not accepted by the county for that purpose, to be and remain in the *custody* of the subscribers for their mutual benefit in proportion to the sums by them contributed for the purpose aforesaid."

(6) It is insisted that no importance can be attached to an acceptance on the part of the county, especially after so long an acquiescence by the grantees, or trustees, in the claim of the public to use the premises for the particular purpose to which they were dedicated. There is, however, ample evidence of an acceptance, in the fact that the county courts were held in said court house until 1796, a period of twelve years next ensuing the dedication.

(7) If there was not an acceptance, then the estate remained in the *custody* of the trustees, for the same purpose.

2. The use has been, in fact, *public*, and in strict accordance with the purpose of the grant, or trust, from its date to the finding the indictment. The state courts were held in the court house then erected and still standing until 1796, and the U. S, courts have also been holden there from 1791 to the present time. Houses and house-yards have been erected and laid out, abutting or bounding upon the sides of the yard, or common ; and the common has been open to, and used by, the public, for fifty years.

It hence follows,

3. That " the rights of the public under said deed" did *not* cease " when the state courts and the legislature ceased to hold their sessions in said court house," as contended by the defend- ant. But,

4. If they did thereby cease, no one but the grantor, or donor, could resume them ; for although the legal estate should be considered as having vested in the persons named in the conveyance, it vested only for the use or uses of the grant; it gave them no *exclusive* beneficial interest, and upon the com-

WINDSOR,
February,
1834.

State
vs.
Trask.

plete extinguishment of the use, the estate might revert to the grantor, but not until it were so extinguished.

5. The public right did not cease, in the present case; the use has constantly remained in the public, until it has become perfect as a dedication, and all individual rights have been long since concluded. Neither the defendant, nor the grantees themselves, can now contest the right of the public.

6. It is contended, and all the cases show, that it is not necessary to the right to use the common, that the public should have in fact used the *particular* land on which the nuisance stands, or that the same should be more convenient in use; the premises are delineated with precision, and the public may appropriate all, and every part, of the common, as may be deemed necessary.

It results from the foregoing considerations, if they are justly grounded, that the defendant cannot justify the act charged as a nuisance, by force of any want, or defect, of the right of the public.

But the defendant, having introduced sundry deeds, with evidence of possession according to them, contends, "that it is to be presumed in law that the lease mentioned in deed E was given by those who had a right to give it." In respect to this, it is sufficient to remark, that it does not appear by whom it was given, nor is it, perhaps, material to know; the giving the lease could not have operated as a resumption, to the lessor, of any right, for the public were then in the actual use of the common for the very purpose to which it was dedicated.

In relation to the effect of said deeds and possession, it is insisted on the part of the prosecution, that they were not adverse to the right of the public.

(1) Possession was originally taken under the lease, and mere holding over is not evidence of an adverse claim.

(2) It appears by the deeds, that the premises which they purport to convey were bounded on the east line of the common, and that it was not until the year 1802 that any attempt was made to pass the *land*, the *house* only having been the subject of conveyances up to that time. Even the deed to the defendant (in 1814) is so ambiguous as to leave it doubtful whether any, or how much, land under the house was conveyed, or supposed to be conveyed.

(3) Although the possession, if adverse, had been sufficiently

WINDSOR,
*February,*
1834.

State
*vs.*
Trask.

long to warrant the presumption of a grant, yet, inasmuch as the defendant claims under the deeds, there can be nothing presumed, as in absence of written evidence of a grant, there may be; he having entered under a lease set up by him as rightful and merely continued to hold over.

No notice to defendant to remove the nuisance was necessary; the possession, after the expiration of the term of lease, was a tenancy by sufferance.

The opinion of the court was pronounced by

PHELPS, J.—This is an indictment for a nuisance. The offence charged consists in the respondent's having placed a dwelling-house upon a part of what is alleged to be a public common or highway, in the town of Windsor, and in maintaining it there to the common nuisance of the public. The act complained of is not denied. But whether the respondent has a legal right to maintain the building in the place where it is located, is the point in issue.

The prosecutor relies upon having shewn a dedication of the *locus in quo* to public use. For this purpose, he offered in evidence at the trial, a deed of conveyance from one Hastings to Nathan Stone and sundry others, which is appended to the case, and which purports to convey the premises in trust, for certain public uses in the first instance, and upon failure of that use, then to the use of the grantees and their associates, subscribers to a fund for erecting a court-house. To the admission of this deed as evidence, the respondent objected; and to the decision of the court overruling the objection and admitting the evidence, the first exception is taken.

It is objected that this deed attempts to limit an use upon an use, which at law cannot be done. The true interpretation of this deed however in this particular, seems to be, that the grantees take in trust, in the first instance for the public, and in case that use fails, then and upon that contingency to the use of themselves and their associates. It is not the case of an use upon an use, but rather a case of contingent or alternative uses, and one of very frequent occurrence in the law. It is of the same character with family settlements, in trust for eldest and other sons in succession. The uses are not contemplated as existing together—the latter being inoperative, while the former continues, and taking effect when the former is determined.

State
vs.
Trask.

The deed is very unskilfully drawn, and although some parts of it may be repugnant or inconsistent, yet it by no means follows that the deed is void.   If the intent of the parties is clearly ascertained upon the face of the deed, courts will give it effect; and those parts which are inconsistent and repugnant to that intent will be rejected.   There is one part of the deed which seems to limit the use to the grantees and their associates for certain public uses.   This is apparently limiting an use upon an use ; but this is clearly inconsistent with another part, which limits the use in the first instance to the public, with a contingent and resulting use to those who paid the consideration.— The first clause was probably introduced as mere words of form, without apprehending their import, and is clearly repugnant to the manifest intent of the grantor.   We have no difficulty therefore in giving effect to the deed, according to that intent.

That the deed is evidence of a design to dedicate the land to public use, we think apparent. .  Although it is inaptly drawn, yet enough we think appears to establish the intent.   The recital of the consideration or motive of the grant—the power to convey to the county—and, above all, the express declaration of the use and purpose to which the land is to be applied, indicate,  beyond  a  doubt, a  trust in the grantees for the public use.

The title indeed remains in the grantees, but a conveyance to the county is not essential to a dedication, and even if such a conveyance had been executed and the county had relinquished the particular use, still the land, or a portion of it, might, and probably would, have been irrevocably dedicated to public use.   No particular form of words is necessary for that purpose. A dedication may be, and often is, without deed.   All that seems necessary, is that the owner shall clearly manifest an intention to dedicate the land to public use, and that the public should, relying upon that manifestation, have entered into the use and occupation of it, in such manner as renders it unjust and injurious to reclaim it.   Much of our public property rests upon this footing.   Plots of land have been set apart for the interment of the dead—they have been used for that purpose, with the assent of the owners, and they have been hallowed by the use.   The right of the owner to reclaim them has been denied.—See *Beatty* vs. *Kurtz*, 5 Peters' Rep.   So public

WINDSOR,
*February,*
1834.

State
*vs.*
Trask.

squares and highways have been laid out by the original own-
ers of city and village sites.——Building-lots have been sold and
built upon, bounded upon these public squares, and from the
moment this has been done with a just understanding on the
part of the purchasers that the land is permanently devoted to
public use, the dedication has become irrevocable. This result
has grown out of the appropriation of land for the erection of
churches, town and county buildings, &c. Even where the
particular use has ceased, the public have acquired a right,
which cannot be disregarded. Long continued usage is evi-
dence of such right, but it is evidence merely. The circum-
stances of that usage are to be considered, and more especial-
ly whether the intention of the owner to dedicate to a general
public use is found. Nor is any particular length of time ne-
cessary to acquire that right.——Such time, and such only, is re-
quisite, as suffices to acquire that interest, with the assent and
concurrence of the owner, which would render it fraudulent in
him to resume his rights. Enjoyment for a given period, for
more than fifteen years, has generally been considered as suffi-
cient *prima facie* evidence of a right in the public ; but enjoy-
ment for a much less period, with other circumstances, may
perfect it.

As evidence of an intent, on the part of Hastings, to dedi-
cate this land to public use, the deed was certainly admissible.
The quantity is evidently larger than would be necessary for
the site of a court-house only.——He doubtless contemplated
the usual space to be laid open about it, and his deed was an
assurance to the public, that this land, or so much of it as should
be required, should be appropriated to that use. If then the
public have availed themselves of this act of dedication, and
the land cannot now be reclaimed without injury to the public,
and to individuals who have invested their money in adjoining
property, at an enhanced price, it is too late to reclaim it.——
There was therefore no error in admitting this deed.

The deed however being admitted, a serious question arises
as to its effect, in connexion with the other evidence in the
case. And this brings us to consider the charge of the court
below, upon the whole case as here presented. In doing this,
it becomes necessary to advert to the evidence on both sides.

· On the part of the prosecution it appears, that the building
in question is located upon the land specified in the deed from

WINDSOR,
February,
1834.

State
vs.
Trask.

Hastings to Stone and others, and that the land, excepting the part covered by this building, has been occupied and enjoyed by the public, from the date of the deed to the present time.

The respondent, on his part, gave in evidence a deed of the premises in dispute from one Grandy to S. Conant, dated in 1795, and a chain of conveyance, bringing down the title of said Grandy to himself; and also evidence tending to prove, that from 1791 to the present time, the building complained of has stood in its present location.

It is remarkable that there is no evidence of the title of Hastings, except what is to be derived from subsequent possession and his deed. Had his previous title been established, the only question in the case would have been, whether the statute of limitations would run in favor of the respondent, against the public. As it is, the title of Hastings depends altogether upon the possession, and is established so far and no farther than that possession goes. There is no ground for assuming that the title of the respondent was derived from Hastings; but, as the possession of the land for private purposes, is inconsistent with the alleged right of the public, the two claims must be taken to be adverse. In this point of view, it is apparent that no title is proved in the public, unless it has been acquired by occupancy. There is no reason for applying the rule, that the statute does not run against the public; but the case presents the simple question of fact, how far the title of the public has been established by subsequent enjoyment. Had that title been established by other evidence, and the attempt had been to divest it by adverse possession, the case would have presented a different question. But when the attempt is to support the public claim by evidence of possession, it is most clear that evidence of adverse possession in the respondent is admissible to contradict it; and if the possession is not made out, the attempt fails. The title of Hastings might have been good, as to that part which has been occupied by the public, and not so as to the residue.

If, however, we assume, as the county court seems to have done, that Hastings was the common source of title on both sides, still a different view of the subject presents itself from that presented by the charge.

From what has already been said, it will be inferred, that to render a dedication to public use binding, it is necessary, not

WINDSOR,
February,
1834.

State
vs.
Trask.

only that there be some act of dedication on the part of the owner, but there must also be something equivalent to an acceptance on the part of the public. In analogy to grants and other conveyances, the concurrence of two parties seems necessary to pass the right. Towns and cities may be projected—streets, public squares and roads may be laid out, but if no town or city is built, there is no effectual dedication. So in this case, had no court-house been built, the owners might have reclaimed the land; yet even in that case, had the owners permitted it to be appropriated as it has been, they might at this day be bound.

If this position be correct, it follows that there may be an acceptance and appropriation in part, and not for the whole. A piece of land may be dedicated to public use, and yet the public convenience may not require the whole of it; a part may be in fact appropriated, and the residue may, by common consent, be relinquished. Where this is done, and the owner left to erect valuable buildings upon the land, there seems to be the same reason why the public should not reclaim it, as has already been given why the owner should not do so, after an actual appropriation. In this instance, there is strong evidence of such relinquishment. The fact that it was not necessary to the public, their never having occupied it, and the arrangement of the public streets and buildings rendering it of no use to them, seem to warrant the owner in applying it to private use.

The question whether the land in dispute had ever been in fact appropriated to public use, should have been left to the jury.—They should have been charged, that cases may exist, where a dedication is accepted in part, and where a general and more extensive appropriation of land to public use may be limited, restricted and defined by long continued use. That in this case, the public may have availed themselves of so much of the land proffered as was necessary for the purposes of the grant, and waived it as to the residue. And at all events, where the public rely upon usage, as evidence of their right, the right cannot be more extensive than the usage. There was abundant evidence in the case requiring such a charge. It appeared, that as early as 1791, the building occupied its present location; and previous to that date sufficient time had not elapsed to create evidence of a right in the public.

We are of opinion that the charge was erroneous; and that the error consisted principally in these particulars, viz:

WINDSOR,
*February,*
1834.

State
*vs.*
Trask.

1st, In assuming the legal title to be in Hastings at the date of his deed, when there was no evidence to that effect, except a subsequent possession, which did not extend to the land in controversy.

2dly, In assuming that the respondent's title emanated from Hastings, which the charge seems to do, and which is necessary to sustain the charge, upon the point of possession.

3dly, In overlooking the fact, that the public right rested upon usage, and that the burthen of proof as to that usage, whether regarded as confirming the title of Hastings, or as direct evidence of the public right, rested upon the prosecutor. And,

4thly, In the inference, "that the respondent could only be justified by *a right acquired by adverse possession,*" and that the burthen of proof, as to the character of that possession, rested upon him.

For these reasons, the judgment must be reversed, and a new trial granted.