By the Court, Beardsley, J.
Sherrill was a competent witness for the defendants. He had been for many years an. inhabitant of the village of Sandy Hill, residing within its limits, and was therefore a member of the village corporation. (Private Laws of 1810, p. 57, § 1.) His only interest in the event of this cause was as a corporator, but that was too remote and contingent to disqualify him. (The Village of Watertown v. Cowen, 4 Paige, 510; Cowen & Hill’s Notes to Phill. Ev. p, 139, 1541.)
*410 It was proper to allow evidence to be given of the declarations made by the plaintiff to the trustees shortly before the controversy arose. He had occasionally used the land in question in going to and from his barn, and had recently placed a fence upon it. His disclaimer of ownership gave character to these possessory acts, and was admissible with that view, though not for the' purpose of affecting his paper title. The declarations were pertinent, moreover, in aid of the other evidence adduced to establish the dedication on which the defendants relied.
That the plaintiff made out aprima facie paper title, appears to have been acquiesced in by the defendants, for they proceeded to their defence without making any question for the court, and the cause was disposed of on the ground that a legal bar to the action had been proved.
The circuit judge sustained the defence that the Jand had been dedicated to the public use, and therefore the plaintiff’s paper title was unavailable in his favor. It is now objected that the fact of dedication was for the jury, and that the judge erred in assuming it to be established. But this view was not presented at the trial, and the point cannot now be raised. The judge was not requested to submit any fact to the jury. Indeed, there was no conflicting testimony for them to pass upon. Both parties seem to have regarded the testimony given as true, in all its parts and particulars; the only question being as to its legal effect. The counsel for the plaintiff claimed to recover, “first, on the strength of his paper title; and second, on the ground that if the land in question was ever dedicated to the public as a burying yard, the right of the original owners revived when the trustees opened a road through it, or ceased to use it for the purpose to which'it was dedicated.” These points were specifically stated as those on which the plaintiff relied, and they virtually concede, it will be seen, the truth of the matters given in evidence by way of defence. They do not deny the fact of dedication, and claim that the plaintiff had good title at all times; but they place his right to recover on the principle that, having a good paper title, his right to possess and enjoy *411 the premises at his own pleasure, arose from their misuse or non-use by the defendants. On the other hand, it was claimed for the defendants that the proof which had been given constituted an absolute bar to the action; and of this opinion was the judge. He held that the facts proved showed the premises were dedicated to the public as and for a burying ground, and that the use which had been made of them as a road did not divest the public of the rights acquired by the dedication, nor invest the plaintiff with a present right of possession: and thereupon the plaintiff was nonsuited. Exception was taken to this decision, and the question is as to its correctness.
The action is ejectment, and in order to entitle the plaintiff to recover, he must have a right to immediate possession. Whatever takes away that right, constitutes a legal defence. (Cincinnati v. Lessee of White, 6 Pet. Rep. 431,2 ; 2 R.S. 303, § 3.)
Land may be dedicated to pious and charitable purposes, as well as for public ways, commons and other easements in the nature of ways, so as to conclude the owner who makes the dedication. This is the general doctrine. (Pearsall v. Post, 20 Wend. 111; 22 id. 425, S. C. in error.) Public highways and sites for court houses, churches and other public buildings, are familiar instances of the application of the principle. It has been applied to the reservation of a spring of water for public use; (McConnell v. The Town of Lexington, 12 Wheat. Rep. 582; and see 6 Pet. 438; 20 Wend. 120; 22 id. 452;) to a public square in a village; ( Watertown v. Cowen, 4 Paige, 510;) and to a public burying ground. (Beatty v. Kurtz, 2 Pet. Rep. 566; see also 6 id. 430; 22 Wend. 454, 5, 473; State v. Trask, 6 Verm. Rep. 355.)
Dedication, as the term is used in reference to this subject, is the act of devoting or giving property for some proper object, and in such manner as to conclude the owner. The law which governs such cases is anomalous. Under it, rights are parted with and acquired in modes and by means unusual and peculiar. Ordinarily, some conveyance or written instrument is required to transmit a right to real property: but the law applicable to dedications is different. A dedication may be made with *412 out writing; by act in pais, as well as by deed. It is not at all .necessary that the owner should part with the title which he has; for dedication has respect to the possession, and not the permanent estate. Its effect is not to deprive a party of title to his land, but to estop him, while the dedication continues in force, from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has. (Cincinnati v. Lessee of White, 6 Pet. Rep. 431, 438.) The principle upon which the estoppel rests is, that it would be dishonest, immoral or indecent, and in some instances even sacrilegious, to reclaim at pleasure property which has been solemnly devoted to the use of the public, or in furtherance of some charitable or pious object. The law therefore will not permit any one thus to break his own plighted faith; to. disappoint honest expectations thus excited, and upon which' reliance has been placed. The principle is one of sound morals, and of most obvious equity, and is in the strictest sense a part of the law of the land. It is known in all courts, and may as well be enforced at law as in equity.
This being a case to which the law of dedication applies, the use for which the dedication was made must determine the extent of the right parted with by the owner of the land, and acquired by the public. (Cincinnati v. Lessee of White, 6 Pet. Rep. 438.) Where, as in the case of a highway, the public acquire but a mere right of passage, the owner who makes the dedication retains a right to use the land in any way compatible with the full enjoyment of the public easement. But the case is widely different here. The land in question was dedicated as a grave yard, and the ashes of the dead should be allowed to repose in undisturbed solitude and quiet. The grave is hallowed. This sentiment is deeply seated in the human heart, and is all but universal. It exists with scarcely less intensity of strength in the breast of the savage, than in that of civilized man, repelling every rude approach to the resting place of the dead, and forbidding as sacrilegious, its use for any of the secular and common purposes of life. A just deference to this sentiment, and a proper respect for the feelings of those *413 whose friends have been buried in the ground now in contest, are wholly incompatible with the right to exclusive possession set up by the plaintiff.
The particular piece of land in dispute is part of “ the old. burying ground” in Sandy Hill, in which bodies were interred as early as 1775. It was part of lot No. 93, in a tract granted in 1762 to twenty-three persons as tenants in common; which tract, with the exception of lot No. 93, was in the same year divided among the several patentees. Lot No. 93 remained undivided, and in 1776, one of the patentees, and other persons who resided on the tract, cleared off the wood and timber from the piece of ground since known as the old burying place, for the avowed purpose of using it as a burying ground for the inhabitants of the town. As early as 1793 it was enclosed by a permanent fence, and was at all times used as a public grave yard until 1812, when it was filled with graves, and a new cemetery provided. In 1793, the old burying ground was separated from the Petit lot, now owned by the plaintiff, by the fence built at that time.- It does not appear by any direct evidence that either of the original patentees, except Bradshaw, ever did any act indicating an intention to dedicate this grave yard to the public use ; nor, on the contrary, is any dissent shown. Thus, from 1776 to 1812, a period of thirty-six years, the spot was used as a permanent, public receptacle for the dead, and continued to be so used until completely filled with graves. This was with the express concurrence of one of the proprietors, and without dissent on the part of the others. Indeed, no dissent is expressed by any person, so far as is shown by the testimony, until 1842, a period of sixty-six years since Bradshaw assisted in clearing the ground for a public place of burial. Bradshaw, and those claiming under him, are concluded "by Avhat he is proved to have done; and this long continued and uninterrupted use of the premises by the public, furnishes at this time abundant evidence against all who were interested as original owners with Bradshaw. No certain period of time is required to prove a dedication of property to public use. It does not depend upon the lapse of time, but upon the intention *414 and the acts of the parties. Twenty years adverse holding may bar a right of entry, and upon it a grant may be presumed. But time, although cogent evidence of a dedication, is not a necessary ingredient in it. It may be established by acts, unequivocal in their character, on the part of the owner and the public, although occurring on a single day.
The public right to retain this land as a burial place was perfect in 1842, unless previously forfeited by the opening of a street upon it, and its use as a street from about 1815 to 1835. The street was opened by the defendants, and it was used as such by their authority, as far as they could confer any. But the village corporation had no more power in this respect than any individual; and this use of the ground, whether appropriate to the circumstances and the occasion or not, could give no right to the plaintiff as against the public. The right was in the public at that time, as it still is, and the bill of exceptions shows that the defendants do not claim to hold the land in their own right, but simply “as a part of the old burying ground,” and therefore for the use of the public.
When the street was opened, a part of the dead, and a part only, had been exhumed and removed to the new burial ground, and the residue of the bodies still remain. Before the suit was instituted, this part of the old grave yard was enclosed and placed in its former condition, the whole constituting, as it formerly did, but one burial place. We think the judge ruled correctly that the plaintiff had no right to the possession; and the nonsuit was therefore proper.
What right, if any, may hereafter arise in favor of those who can make title from the original owners, it is not necessary now to inquire. The land is still a public grave yard, enclosed, known, and recognized as such. When these graves shall have worn away; when they who now weep over them shall have found kindred resting places for themselves; when nothing shall remain to distinguish this spot from the common earth around, and it shall be wholly unknown as a grave yard ; it may be that some one who can establish a good “ paper title,” will have a right to its possession; for it will then have lost its *415 identity as a burial ground, and with that, all right founded on the dedication must necessarily become extinct.
New trial denied.