VERMONT KAOLIN CORPORATION *v.* FLORENCE E. LYONS.

October Term, 1928.

Present: POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed November 15, 1928.

*F. C. Archibald, Holden & Healy,* and *Ropes, Gray, Boyden & Perkins* (of Boston, Mass.), for the plaintiff.

*Collins M. Graves* and *George L. Hunt* for the defendant.

SLACK, J. The plaintiff seeks specific performance of a contract which is in the language following:

"This indenture made and concluded this 31st day of August 1917 by and between Allie M. and Lula A. Stratton of Bennington in the County of Bennington and State of Vermont, parties of the first part, and I. W. Horn of Brandon in the County of Rutland and State of Vermont, party of the second part,

Witnesseth;

That whereas the said Allie M. and Lula A. Stratton, parties of the first part are the owners of certain real estate situate in said Bennington containing two hundred acres of land more or less, and being the land and premises conveyed to the said Strattons by warranty deed of Charlotte Stratton dated November 14th, 1911 and recorded in book 72 at page 139 of the Bennington Land Records.

And whereas the said I. W. Horn, party of the first part, his heirs and assigns, is desirous of prospecting said real estate for minerals,

Now therefore, in consideration of one dollar and other good and valuable consideration, the receipt whereof is hereby acknowledged, the said parties of the first part hereby grant to the said party of the second part, his heirs and assigns, the right to go upon said premises at any and all times by himself, his agents, laborers and assigns with beasts and vehicles loaded and unloaded and to erect thereon the suitable paraphernalia necessary for the purpose of digging and prospecting for minerals.

It is further understood and agreed that the party of the second part, his heirs and assigns, by reason of the consideration herein set forth, is to be allowed to use the water flowing on said premises the same to be so used as not to interfere with the parties of the first part obtaining sufficient water for domestic purposes.

It is understood and agreed that the party of the second part is not to use the water and then return the same to the brook in such a way as to interfere with the parties of the first part obtaining pure water supply such as they have now.

It is further understood and agreed that the party of the second part is to have the free and uninterrupted use of all roads now built and in use on said described premises and further that the party of the second part, his heirs and assigns, may erect necessary sluice ways, pipe line, telephone or cable as may be deemed necessary to the proper carrying out of his mining operations.

It is agreed, however, that any new roads found necessary to be built and constructed by the party of the second part shall be paid for by the party of the second part, his heirs and assigns, at the rate of One Hundred Dollars ($100) per acre.

Now then it is understood and agreed that if the said party of the second part, his heirs and assigns, is satisfied that there are minerals in or upon said premises, and if he desires to purchase any portion of said premises, the said parties of the first part hereby agree to sell and convey said premises or a portion thereof to the said party of the

second part, his heirs and assigns, and to give to the said party of the second part a sufficient warranty deed of such land as the said party of the second part, his heirs and assigns, may require for the proper purpose of carrying on mining operations.

It is understood and agreed hereby that the party of the second part will pay to the parties of the first part One Hundred Dollars ($100) per acre for any and all land so required by him, his heirs and assigns.

In witness whereof the parties hereto set their hands and seals this 31st day of August, 1917.

| In presence of | | |
|---|---|---|
| W. J. Meagher | Allie M. Stratton | (L.S.) |
| Lucina Harrington | Lula A. Stratton | (L.S.) |
| | I. W. Horn | (L.S.)'' |

Issue was joined on the complaint and answer, and on facts found and stated by the chancellor a decree dismissing the complaint was entered, from which plaintiff appealed.

The facts material to the questions presented are these: The instrument in question was executed and recorded like a deed of real estate. Soon after its execution Horn, Crockett & Company, a copartnership engaged in mining and refining china clay, and with whom Horn was associated, began prospecting the Stratton land to ascertain whether it carried clay deposits which they wished to develop, and continued such prospecting from time to time until the last of the following July, when they ceased operation, and never made any further examination of said land. During all the time that Horn held said agreement it was treated by the partners as firm property. On June 18, 1918, the Strattons conveyed their land to defendant, and by the same instrument conveyed ''whatever benefit or interest we now have in a certain lease given to Horn & Crockett Co. of Brandon, Vt., for digging, prospecting, and taking away clay.'' The defendant knew or ought to have known of the Stratton-Horn agreement and the provisions thereof. Under date of May 8, 1919, Horn, Crockett & Co., wrote defendant's husband, who was authorized to act for her: ''We are not interested in the Stratton property as our borings showed that there was no body of clay there that would be worth trying to develop.'' Under date of September 17, 1919, said firm wrote defendant's husband offering to sell such results of their pros-

pecting as they then had for $100, and stated that they thought the charge a low one since such information cost them over $1,400. Under date of December 2, 1921, said firm again wrote defendant's husband: "The White Chapel farm (referring to the Stratton land) we have already examined and there is nothing there that would interest us." The Stratton property was treated by Horn and the defendant, each to the knowledge of the other, as of no further interest to Horn after May 8, 1919, until about August 12, 1926, when he assigned and conveyed to plaintiff all his "estate, right, title and interest to and under" the Stratton agreement. Shortly after this transfer the plaintiff, and others acting under its authority and consent, began an investigation of the land in question, from which it was determined that there was a substantial quantity of good kaolin thereon. Over $10,000 was expended in this latter investigation, not over $100 of which was furnished by plaintiff. As soon as defendant, who was then in California, learned of these operations, she ordered them stopped and demanded damages for what had been done. On December 22, 1926, plaintiff tendered defendant $3,131, which amount was sufficient under the terms of the Stratton-Horn agreement to cover the land it wanted, and demanded a warranty deed of such land. The defendant refused to accept the tender or to give a deed. It further appears that prior to the hearing before the chancellor, the defendant was never informed by Horn, his firm, or the plaintiff, nor had she in any way learned that they or any of them had determined that there were minerals which they desired to mine in or upon the land covered by the deed demanded other than what she must necessarily have inferred from the tender and demand, and that at the time of such tender and demand a reasonable time for the exercise of the option in the Stratton-Horn agreement had expired. The chancellor states that there was no evidence tending to show that the plaintiff had any knowledge of any communication between defendant and Horn or his firm or had any knowledge that defendant claimed that any interest or right under the Stratton-Horn agreement had been abandoned, surrendered, or in any way terminated prior to October 12, 1926; or that defendant had in any way changed her status or plans respecting such land by reason of the acts now claimed to constitute an abandonment, surrender, or termination of that agreement.

The first and important question is the effect of the Stratton-Horn agreement. The plaintiff contends that it gave Horn an inheritable, assignable *profit à prendre* in the Stratton land, with an option to purchase the same coextensive in duration with the profit. The defendant claims that it merely gave Horn a right to prospect the Stratton land for the purpose of determining whether he wished to purchase it, and, if ·he did, to have a deed of such part as he elected to take.

That this instrument was very unskillfully drawn to effect either object claimed must be admitted. That certain language appearing therein was used as mere matter of form with little or no regard for its legal effect is manifestly true. Nevertheless, when all its provisions are considered together, as they must be, there seems to be no doubt as to what the parties intended. Our master rule of construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement. *Johnson et al.* v. *Barden et al.,* 86 Vt. 19, 83 Atl. 721, Ann. Cas. 1915A, 1243; *DeGoosh* v. *Baldwin & Russ,* 85 Vt. 312, 82 Atl. 182; *Robinson* v. *Missisquoi Railroad Co.,* 59 Vt. 426, 10 Atl. 522; *Collins* v. *Lavelle,* 44 Vt. 231; *Flagg* v. *Eames,* 40 Vt. 16, 94 A. D. 363; *Mills* v. *Catlin,* 22 Vt. 98; *State* v. *Trask,* 6 Vt. 355, 27 A. D. 554.

Then, too, while the language of a written instrument governs in determining its effect and operation, in construing such language the situation of the parties, the subject-matter, and the object and purposes sought to be accomplished may be considered. *City of Burlington ex rel.* v. *Mayor of Burlington,* 98 Vt. 388, 398, 127 Atl. 892; *Crosby* v. *Montgomery,* 38 Vt. 238; *Walker* v. *Pierce,* 38 Vt. 94; *Robinson* v. *Missisiquoi Railroad Co., supra.*

Applying these rules of construction to the instrument before us, what is the result? Neither the language used therein, nor the formality attending its execution, standing alone, was sufficient to create a *profit à prendre,* which is defined to be "the right to take soil, gravel, minerals and the like from the land of another" (3 Bouv. Law Dict. 2736); or to hunt, trap, fish, etc., on the land of another (*Payne* v. *Sheets,* 75 Vt. 335,. 55 Atl. 656), since this essential element, *viz.,* the right to take away minerals, etc., from the Stratton land, is wholly lacking. Nothing in this instrument can be construed as being in-

tended to convey such a right, unless, as claimed by the plaintiff, the right to prospect implied the right to carry away soil or minerals for the purpose of testing, which is more or less conjectural, but, if true, since a mere incident to the prospecting, would not suffice to create such an estate as plaintiff claims. Numerous cases are to be found where instruments combining the right to *mine*, if desired, with the right to prospect, have been held to create such an estate; but no case has come to our attention, and we dare say that none exist, where a mere right to prospect, regardless of the implied rights incident thereto, has been held to do so. It seems perfectly apparent that the intention of the parties to this agreement, to be deduced from the language of the instrument itself, was simply to give Horn, and perhaps his assigns, a right to examine the Stratton land for the purpose of determining whether he or they wanted to purchase it, and an option to purchase, if it was desired to do so. However, if the language of the instrument leaves doubt as to this, such doubt is dispelled when the language is considered in connection with the situation of the parties, the subject-matter, and the object and purpose which they sought to accomplish as appears from the findings above stated. Then, too, the construction which the parties placed upon this instrument as evidenced by their conduct extending over a period of more than seven years may be considered, if necessary, in determining what was thereby intended (*Barker et al.* v. *Troy & Rutland R. R. Co.*, 27 Vt. 766, 776; *Vt. & Canada R. R. Co.* v. *Vermont Central R. R. Co.*, 34 Vt. 1, 64; *White* v. *Amsden,* 67 Vt. 1, 30 Atl. 972; *Kopper* v. *Fullerton,* 71 Vt. 211, 44 Atl. 92; *Douglass & Varnum* v. *Morrisville,* 89 Vt. 393, 470, 95 Atl. 810; *Clarke* v. *Mylkes et al.,* 95 Vt. 460, 115 Atl. 492), and this, too, tends to refute the plaintiff's claim.

The words of inheritance and assignability that appear in that part of the instrument which provides for the right of examination cannot be permitted to override the plain intent of the parties, or to create an interest in real estate out of an agreement that was obviously not intended to have that effect.

Since it was not necessary that the right to prospect be in writing, abandonment, surrender, or revocation of such right could be established in the same manner as if it rested in parole.

378

■ ■ Assuming, but not deciding, that the rights and obligations of these parties are the same under this agreement as were those of the original parties thereto (they cannot be greater), the decree must be affirmed. The agreement fixed no time within which the prospecting was to be done, or the option exercised. In this situation the law presumes that a reasonable time was intended for each. Horn, and his associates, completed such examination as they cared to make July 31, 1918, and the following May so notified the defendant, in effect, and at the same time notified her that the result of their examination was such that they were not interested in the property. More than seven years thereafter the plaintiff acquired from Horn such rights as he then had under this agreement, and entered upon and examined defendant's land all without her knowledge, and on December 22, 1926, attempted to exercise the option. It is found, and very properly so in the circumstances, that a reasonable time in which to do this had then expired. This finding, which is unchallenged, disposes of the case. Neither the fact that defendant's status toward her own property had not been changed, nor the fact that some one had expended a considerable sum in making an unwarranted examination thereof, can affect the result. She acted well within her legal rights and they acted without any apparent justification whatever.

It is unnecessary to consider the question of abandonment.

*Decree affirmed, and cause remanded.*