JAMES E. KENNEDY, ADMR., ET AL. *v.* HARVEY T. RUTTER, ADMR., ET AL.

January Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES and STURTEVANT, JJ., and CUSHING, Supr. J.

Opinion filed May 2, 1939.

*Chas. H. Darling* and *J. A. McNamara* for the plaintiffs.

*M. G. Leary, Guy M. Page* and *M. G. Leary, Jr.,* for the defendants.

STURTEVANT, J.  This case is here on plaintiff's appeal from the decree of the chancellor sustaining defendants' demurrer to the bill.  Plaintiffs seek to have the ownership of the westerly half of certain premises located in the city of Burlington decreed to them.

The facts material to the determination of the questions before us as appear from the bill are as follows:

On September 15, 1880, Edward Dwyer acquired by purchase from one H. S. Kimball and wife certain lands with a building thereon now known as the Dwyer block located on the northerly side of Cherry Street in the city of Burlington. Certain furniture in said building at that time also passed to him as a part of his purchase. Edward Dwyer married Susan S. Dwyer April 21, 1896. He deceased February 21, 1919, and on June 19, 1919, Harvey T. Rutter was appointed administrator of his estate. Susan S. Dwyer deceased August 21, 1933, and James E. Kennedy was duly appointed administrator of her estate.

Said Edward and Susan occupied said premises as their homestead from the time of their marriage to the time of his death in 1919, and Susan continued to live on said premises until the time of her death in 1933. There are five children of said Edward Dwyer by a former marriage now living and there are several grandchildren who are sons or daughters of deceased children of said Edward, and these children and grandchildren are all and the only heirs-at-law of the said Edward. The plaintiffs other than said Kennedy are brothers and sisters of the said Susan S. Dwyer.

On January 1, 1912, said Edward and Susan S. Dwyer conveyed said premises by quitclaim deed to one Albert G. Whittemore, then a practicing attorney in Burlington. On the same day said Whittemore reconveyed said premises by quitclaim deed, the material parts of said deed being in words and figures as follows:

"QUITCLAIM DEED

"KNOW ALL MEN BY THESE PRESENTS—That I, A. G. Whittemore, * * * * have remised, released and forever quit-claimed, and do hereby remise, release and forever quit-claim unto the said Edward Dwyer and Susan Dwyer, their heirs and assigns all right and title which I, the said A. G. Whittemore, have in and to the following described piece or parcel of land situated in the City of Burlington, in said Chittenden county, viz.:"

[Then follows description of property].

"The purpose and intent of this conveyance is not to make the grantees strictly joint tenants but to give and grant unto

the said Susan Dwyer in case she survives her husband, said Edward Dwyer, the sole use, income and control of said land, premises and property after the death of her husband, Edward Dwyer, for and during the remainder of her natural life, with remainder at her decease to her husband, Edward Dwyer, and his heirs, if he survives his said wife, and if he does not survive his said wife, then the lawful heirs of said Edward Dwyer to them and their heirs forever.

"To HAVE AND TO HOLD all my right and title in and to the said remised, released and quit-claimed premises with the appurtenances thereof to the said Edward Dwyer and Susan Dwyer, in the manner above stated and their heirs and assigns, to them and their own proper use, benefit and behoof forever."

[Conclusion in usual form].

On September 25, 1913, said Edward and Susan made, executed and delivered to said Whittemore a second quitclaim deed of the aforesaid premises and on the same day said Whittemore made, executed and delivered to said Dwyers a quitclaim deed describing said premises, the material parts of said last mentioned deed being as follows:

## "QUIT CLAIM DEED

"KNOW ALL MEN BY THESE PRESENTS: THAT I, Albert G. Whittemore, * * * * have remised, released and forever quit-claimed, and do hereby remise, release and forever quit-claim unto the said Edward Dwyer and wife, Susan S. Dwyer, their heirs and assigns, all right and title which I, the said Albert G. Whittemore, have in and too the following described piece or parcel of land situated in the City of Burlington, in said Chittenden County, viz.

"The use and occupation during their natural lives or the natural life of either of them, of the entire land and premises, situated on the north side of Cherry Street and known as the 'Dwyer block property' and being the same land and premises conveyed to me by said Edward and Susan S. Dwyer by quit-claim deed of even date herewith, to which deed and its record when made, reference is made in aid of the description, subject to the following conditions, to wit: Upon the death of said Edward Dwyer, I hereby convey unto the said Susan S. Dwyer if she is then living, the title in fee and absolute ownership of the westerly one-half of said entire land and premises, the division line to be midway between the easterly and westerly lines thereof

and also the use during her natural life of the easterly one-half of said entire premises but if said Susan S. Dwyer does not survive said Edward Dwyer, I then convey said westerly one-half of said entire premises upon the decease of said Edward Dwyer in fee forever unto her sisters, Mary Sullivan and Margaret Sullivan of Williston, Vt., in equal shares, the same to be their and their heirs forever, subject to the use of the same by the said Edward Dwyer during his natural life, and upon the death of said Susan S. Dwyer, I hereby convey unto the said Edward Dwyer and his heirs forever the title in fee to and absolute ownership of said easterly half of said entire premises and the use during his natural life of the westerly half of said premises. This conveyance is made at the request and with the consent of the said Edward and Susan S. Dwyer for the purpose of dividing the property of said Edward between them.

"To HAVE AND TO HOLD all my right and title in and to the said remised, released and quit-claimed premises with the appurtenances thereof to the said Edward Dwyer and Susan S. Dwyer, their heirs and assigns to them and their own proper use, benefit and behoof forever."

[Conclusion in usual form].

The plaintiffs claim that by force of the last above mentioned deed, dated September 5, 1913, they own and have a vested title in and to the westerly half of said premises and a homestead and homestead rights in the easterly half thereof. Defendants contend that under the facts set forth in the bill, all of said premises became vested in title and right of possession in the children and children of deceased children of said Edward Dwyer at the decease of Susan S. Dwyer, said Edward having died several years before that time. Defendants base this claim upon the deed above mentioned which is dated January 1, 1912.

The answer to the claims so made by the parties depends upon the construction of said deed from Whittemore, dated January 1, 1912, and we first address our attention to this instrument, having in mind the following principles relative to construction of deeds, namely: "Our master rule for the construction of deeds is that the intention of the parties, when ascertainable from the entire instrument, prevails over technical terms or their formal arrangement." *Vermont Kaolin Corporation* v. *Lyons,* 101 Vt. 367, 376, 143 Atl. 639, 642; *Johnson et al.* v. *Barden et al.,* 86 Vt. 19, 83 Atl. 721, Ann. Cas. 1915A, 1243;

*DeGoosh* v. *Baldwin & Russ*, 85 Vt. 312, 82 Atl. 182; *Robinson* v. *Missisquoi Railroad Co.*, 59 Vt. 426, 10 Atl. 522; *Collins* v. *Lavelle*, 44 Vt. 230, 231; *Flagg* v. *Eames*, 40 Vt. 16, 94 A. D. 363; *Mills* v. *Catlin*, 22 Vt. 98; *State* v. *Trask*, 6 Vt. 355, 27 A. D. 554.

█ "Then, too, while the language of a written instrument governs in determining its effect and operation, in construing such language the situation of the parties, the subject-matter, and the object and purposes sought to be accomplished may be considered." *Vermont Kaolin Corporation* v. *Lyons, supra*, 101 Vt. at page 376, 143 Atl. at page 642; *City of Burlington ex rel.* v. *Mayor of Burlington*, 98 Vt. 388, 398, 127 Atl. 892; *Crosby* v. *Montgomery*, 38 Vt. 238; *Walker* v. *Pierce*, 38 Vt. 94; *Robinson* v. *Missisquoi Railroad Co., supra*.

█ While plaintiffs do not seriously dispute the principle that if the grantor in a deed clearly expresses his intent and same is a legal one and does not violate the law, such intent must control, they insist, however, that in the deed in question the grantor's intent is not clear and that the clause next following the description hereinafter referred to as the purpose and intent clause is repugnant to the granting clause. They contend that therefore the granting clause alone should be given force and that we should disregard the very clause which purports to set forth the "purpose and intent" of the conveyance. We cannot agree with this contention. In the granting clause appear the words "* * * * do hereby remise, release and forever quit-claim unto the said Edward Dwyer and Susan Dwyer, their heirs and assigns, all right and title * * * *." Then follows a description of the property and this is immediately followed by the purpose and intent clause. While it is true as stated in the case of *Bennett et al.* v. *Bennett et al.*, 93 Vt. 316, 107 Atl. 304, "* * * * the habendum in a deed, when repugnant to the grant, yields to the manifest terms of the grant. If clearly repugnant to the grant, it is treated as of no validity and effect," it is also true as stated in the Bennett case, "* * * * the habendum and subsequent covenants may modify, limit and explain the grant but they cannot defeat it when expressed in clear and unambiguous language." *Bennett et al.* v. *Bennett et al., supra*, 93 Vt. at page 318, and 107 Atl. at page 305, and cases cited. True it is that the granting clause in this deed standing alone and unqualified is sufficient to pass a fee simple title but when we give effect to the clear purpose and intent of the clause following the description it appears beyond

question that the grantor did not intend to pass full and complete fee simple title to said Dwyers. The paragraph immediately following the description begins as follows: ''The purpose and intent of this conveyance is not to make the grantees strictly joint tenants but to give and grant unto the said Susan Dwyer in case she survives her husband, said Edward Dwyer, the sole use, income and control of said premises and property after the death of her husband, Edward Dwyer, for and during the remainder of her natural life, * * * *.'' Since this is a conveyance to husband and wife, presumptively they took whatever estate was conveyed to them as tenants by the entirety. *Brownson* v. *Hull et al.*, 16 Vt. 309, 42 A. D. 517; *Davis* v. *Davis and Trustee,* 30 Vt. 440, 442. While an estate by entireties is not in all respects like a joint tenancy, it is more like this class of estates. than it is like a tenancy in common. It agrees with the joint tenancy in the distinguishing feature of survivorship but differs from it in the entirety of title as well as seisin of each grantee in the whole estate. Tenants by the entirety have but one title and each owns the whole, and neither, without the concurrence of the other, has power to convey to any third person and thus to sever the tenancy. In a joint tenancy each is said to have the seisin of the whole but has title only to his aliquot part. *Brownson* v. *Hull et al., supra.* Since in an estate by entireties the survivor will take the whole estate unless the instrument of conveyance shows a different intent on the part of the grantors and also since in a joint tenancy the survivor or survivors take the whole estate, that portion of the purpose and intent clause above quoted takes on a plain and clear meaning, namely, in case Susan Dwyer survives her husband, Edward, she has a life estate only in the premises and in this respect the estate granted differed from a joint tenancy. In an estate by entireties one of the grantees may hold only a life estate. *Davis* v. *Davis and Trustee, supra.* So in this deed it clearly appears that the grantor intended that the estate by entireties conveyed to said Edward Dwyer and his wife, Susan, should terminate at the death of Susan and this is made clear and certain by the words next following that portion of the purpose and intent clause above quoted which is as follows: ''* * * * with remainder at her decease to her husband, Edward Dwyer and his heirs, if he survives his said wife, * * * *.'' Thus far the meaning and intent of the grantor is clear and without doubt. Edward Dwyer and his wife are granted an estate by

entireties and if the wife outlives her husband, Edward, she has the use and income of said premises for the remainder of her life. If the wife does not outlive her husband, then he takes an estate in fee simple to said premises. What did the grantor intend to happen to the fee of these premises at the termination of Susan's life estate if Edward should predecease his wife, as he in fact did? This is fully answered by what follows, the last above quoted part of said purpose and intent clause, namely, "and if he does not survive his said wife, then the lawful heirs of the said Edward, to them and their heirs forever." True it is that this purpose and intent clause might have been set forth in better form, yet we think that the purpose and intent of the grantor is clear and free from doubt. While in the so-called granting clause the grantor has used the words "* * * * unto the said Edward Dwyer and Susan Dwyer, their heirs and assigns, * * * *," it is made clear in the purpose and intent clause that Susan gets a life use only and her heirs get no interest whatever. Since this is the plain intent of the grantor, it appears by authority of the cases hereinbefore cited that we must so construe this deed. We so give effect to the granting clause as clearly limited and qualified by the purpose and intent clause and in so doing all questions of repugnancy disappear.

The question of repugnancy aside, plaintiffs contend that the intent of the grantor as gathered from the whole instrument indicates that the following estate by entireties was intended, to Edward Dwyer, an estate in fee simple, and to Susan Dwyer an estate during the remainder of her natural life. They contend that by the use of the words "lawful heirs" the grantor intended to reserve for Edward the fee, his thought being that if Edward survives Susan, the remainder would remain in him, and if he predeceased Susan, then the fee would continue in his estate. In support of this contention plaintiffs cite *Mayes et al.* v. *Kuykendall*, (Ky.) 112 S. W. 673. The material part of the deed there under consideration is as follows: "J. W. Mayes has this day given, granted, bargained, sold and conveyed unto the said V. F. Mayes, of the second part, her heirs and assigns, a certain tract or parcel of land * * * *. To have and to hold the same during her natural life or in case she should become a widow, then during her widowhood; at the expiration of the aforesaid times, then to my lawful heirs and assigns forever." In construing this deed

the court stated: ''At common law the rule is that where one conveys a life estate to another, with remainder to the heirs of the grantor, they take, not as remaindermen, but as reversioners, and the grantor being himself the reversioner after such limitation he may grant away the reversion.'' If the principle of this case were to be applied in the case under consideration, it would result in a conveyable reversion in the grantor, Whittemore, not in Edward Dwyer, and then only if the attempted remainder were to Whittemore's lawful heirs, and this is by no means the case before us.

The case at bar is also distinguishable from the Mayes case in that we are considering a deed which conveys an estate to Edward Dwyer during the life. of Susan Dwyer, with remainder to the lawful heirs of Edward in case he predecease Susan. In this situation the result contended for by the plaintiffs could be obtained only by the application of the rule in Shelley's case, and this rule has never been followed in this State. *Gilkey* v. *Shepard*, 51 Vt. 546; *Smith* v. *Hastings*, 29 Vt. 240; *Blake* v. *Stone*, 27 Vt. 475.

Plaintiffs contend that the giving of the 1913 deed by Edward Dwyer and his wife, Susan, to said Whittemore and receiving from him the above mentioned deed dated September 25, 1913, should be considered in construing the deed of January 1, 1912, which we are considering, but it is to be remembered that rules of construction are adopted for the sole purpose of removing doubts and obscurities so as to get at the meaning intended by the parties. When as in this case there is no doubt or obscurity, there is no room for construction. The instrument must be given effect according to its terms. So when the meaning of an instrument is doubtful, resort may be had to the practical construction adopted by the parties, but such construction is of no force or effect when its meaning is clear and obvious. *Bragg* v. *Newton*, 98 Vt. 102, 104, 105, 126 Atl. 494, and cases there cited.

The construction of this deed contended for by plaintiffs disregards all of that part of the ''purpose and intent'' clause following the words ''with remainder at her decease to her husband, Edward Dwyer, and his heirs,'' or distorts the meaning of a part of what follows and disregards the remainder. It is plainly and clearly stated that Edward took this estate in fee simple, as is stated in said clause, only ''* * * * if he survives his said wife

* * * *.'' Edward did not survive his said wife and so the last part of this clause becomes operative, viz., ''* * * * and if he does not survive his said wife, then the lawful heirs of said Edward Dwyer, to them and their heirs forever.'' The defendants in this case excepting Harvey T. Rutter, administrator of Edward Dwyer's estate, are children or representatives of children of said Edward living at the time the first above mentioned deed from Whittemore was delivered on January 1, 1912. Apparently the word ''heirs'' is used in said clause in its popular sense rather than in a strict legal sense. Similar use of the word has before been considered by this Court.

In *Smith* v. *Hastings, supra,* this Court considered the construction of a certain deed in which the grantor conveyed to his daughter, Diana Smith, certain lands, the granting clause in said deed containing the following words: ''* * * * give, grant, bargain, sell and confirm unto the said Diana during her natural life all the use and profits * * * *.'' In the *habendum* appears the following: ''To have and to hold the above granted and bargained premises with the appurtenances thereof unto the said Diana during her natural life, and then to her heirs forever, to them and their own proper use, benefit and behoof.'' Held that the ''heirs'' who were Diana's children took as purchasers under the deed and were entitled to hold against their father, Diana's husband. After so holding, the Court states: ''And as the first grantee left children who were evidently intended by the grantor to be described in the deed, under the term heirs, it is needless to speculate as to what would have been the effect of such language in case of failure of children.''

Also in the case of *Blake and wife* v. *Stone et al., supra,* (27 Vt. 475), this Court considered the construction of a deed. This deed conveyed to one Leonard Burt the premises in question with *habendum* as follows: ''To have and to hold the same to the said Leonard Burt for and during the term of his, the said Leonard Burt's natural life, and no longer, and in remainder to the heirs of his, the said Leonard Burt's body (Charles Burt, son of said Leonard, excepted) forever.'' Considering this case at page 477, speaking of the word ''heirs'' as used in the deed, this Court stated: ''But the remainder here being given to Leonard Burt's heirs, except Charles Burt, it is regarded by the decided cases, sufficient to indicate that the term is used to designate certain

persons, and is therefore not a word of limitation upon the estate of the first grantee, but a designation of those who are to take in remainder as purchasers. *Clerk* v. *Day*, Cro. Eliz. 13; *Minshull* v. *Minshull*, 1 Atk. 412. We are, therefore, satisfied that upon the stated rules of construction of the common law, Leonard Burt took only a life estate, and that the remainder in fee vested immediately in the persons who would become his heirs, if they survived him, excluding Charles Burt, and that consequently Reuben Burt was seized of the remainder in fee, at the time he conveyed to Russell Hyde * * * *.'' Also, *Dwight* v. *Eastman et al.*, 62 Vt. 398, 20 Atl. 594; *Sawyer* v. *Little*, 4 Vt. 414.

In the case before us the persons who were to take the remainder in this estate if Edward predeceased Susan were definite and determined, they being his children. There was the possibility that other children might be born to Edward after January 1, 1912, and so cut down the share of this estate going to each of his ''heirs at law'' under the deed if Edward predeceased Susan, but no person or class of persons could come into existence which would entirely defeat the right of Edward's children who were living January 1, 1912, to take under the deed. Each of his children living at his decease was certain to be within the class of ''his heirs at law.'' *Putnam* v. *Story*, 132 Mass. 205. Whether Edward's heirs at law would in fact take the remainder estate under the deed depended upon Edward predeceasing Susan, and therefore the children of Edward who were living at the time of the delivery of said deed then became interested in said estate as contingent remaindermen.

When as in this case the remainderman is ascertained and the uncertainty which makes the remainder contingent is to the happening of the event upon which it is limited to take effect, such contingent remainder is alienable because in the remainder there is an interest coupled with a possibility. 21 C. J., p. 998, art. 156; 2 Washburn, Real Property, 240; 23 R. C. L. p. 572, sec. 125; *Bartholomew* v. *Murry et al.*, 61 Conn. 387, 23 Atl. 604, 29 A. S. R. 206; *Putnam* v. *Story, supra.*

From the foregoing, it follows that the children of Edward, living at the time of the delivery of the deed from Whittemore, dated January 1, 1912, took an interest in the premises therein conveyed as contingent remaindermen. The uncertainty which made the remainder contingent was as to the event upon which it was limited to take effect, viz., whether Ed-

ward should predecease Susan. Should this event happen, those who would take were definite persons, viz., Edward's children and representatives of children. The interest which each of Edward's children took when the deed of January 1, 1912, was delivered was in the nature of what has been designated as "a vested interest in a contingent remainder." *Putnam* v. *Story, supra; Cummings* v. *Stearns,* 161 Mass. 506, 37 N. E. 758. Any subsequent deed given by Edward and Susan under the circumstances of this case could not affect this interest. When Edward died leaving Susan still living, this remainder became vested. At Susan's death in 1933, the estate upon which said remainder was limited to take effect terminated and Edward's children and representatives of children became owners of said premises with the right of immediate possession. The bill discloses no right, title or interest of plaintiffs in or to said premises and therefore defendants' demurrer was properly sustained.

*Decree affirmed and cause remanded.*