### HARDING & LOFTIN *v.* JASPER.

To constitute a dedication of land for the purposes of a rural highway, no particular formality is necessary. The intention on the part of the owner to so dedicate, is the vital question.

This intention may be manifested, with or without writing, by any act of the owner, as throwing open his land to public travel, platting it and selling lots bounded by streets designated on the plat, or acquiescence in the use of land as a highway; and, hence, time is not an essential ingredient in the act of dedication.

Time, though often a material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. If the soil be accepted and used by the public in the manner intended by the owner, the dedication is complete—pre-

cluding the owner and all claiming in his right, from asserting any ownership inconsistent with such use.

Dedication is a conclusion of fact to be drawn by the jury from the circumstances of each case. And the *quantum* and kind of evidence of the intention to dedicate depend somewhat on the peculiar circumstances of the country.

The authorities on this question stated and commented on.

Stronger proof of dedication is required in cases of roads in the country than in cases of streets or lands in a town or city.

Where a portion of land claimed under a Mexican grant, being uninclosed and waste, has been used as a road for public travel for a series of years, pending proceedings by the claimant for confirmation of his grant, the land being for the most part in the actual occupation of settlers, and the claimant being aware that the land was so used, and not objecting to it; *held*, that this does not consti_ tute a dedication of the land used as a road to public use; that, the land being in litigation between the government and claimant, both as to the right and the boundaries, the claimant had a right to wait, under the statute, until after a patent issued, without prejudice to his right of action by lapse of time; that he was not bound to fence in the whole land to rebut the presumption of dedication of a small part.

An order of the Board of Supervisors of a county that "all roads now traveled by wagons and pack mules within the limits of the county be, and the same are hereby, declared public highways," though not valid as transferring the title of the land to the public, still may be good evidence, in connection with other proof, to show a control on the part of the county over a road as a public highway, and a knowledge of such control on the part of the owners of the land, and thus to furnish a circumstance from which a dedication may be inferred.

APPEAL from the Tenth District.

To the facts stated by the Court, add that the travel over the road in question began in 1849, and continued up to about the fall of 1857, when plaintiffs closed up the road; that the patent for the land embraced in the Johnson grant, issued to him in March, 1857; that Woodruff, though owning an interest in the grant from 1849, did not have the fee until October, 1857, when a deed was made to him by Robinson, of a portion of the grant.

That Woodruff sold to plaintiffs in October, 1857, and that this suit was begun in the fall of 1858, for a trespass alleged to have been committed at that time.

Plaintiffs, among other instructions which were given, asked the following: "That the order of the Board of Supervisors declaring all roads then traveled public highways, of itself was no justification to the defendant in the absence of proof of assessment and payment of damages for the taking of the road." The Court gave the instruction, with the addition: "unless you

find, that the road in controversy was a public road at the time the order was passed." Plaintiffs excepted to the addition.

The Court gave, at defendant's request, the following instructions:

2. " The jury are the judges as to whether there was a dedication of the road to the public. If the jury believe, from the evidence, that the road or roads were regarded and recognized by the plaintiffs' grantors as a public highway; and, that plaintiffs purchased their land with a knowledge that the road had been so regarded and recognized, then you must find for the defendant."

3. " If the jury find from the evidence, that the plaintiffs, at the time they purchased their land, or at any time afterward, by declarations or acts, recognized the road as a public highway, then they must find for the defendant."

Verdict for defendant, judgment accordingly. Plaintiffs appeal.

*Charles Lindley,* for Appellants—on the general subject of dedication of land for public uses as a highway, cited: Angell on Highways, 112, 114—127, 128—135; 14 Barb. 339; *Dixon* v. *Irwin,* 9 How. 10; *Stacy* v. *Miller,* 14 Mo. 478; *Hutts* v. *Tindal,* 6 Rich. S. C. 396; *Hoggs* v. *Gill,* 1 McM. Id. 329; *State* v. *Thomas,* 4 Harr. 568; *Badeau* v. *Mead,* 14 Barb. 328; *Warren* v. *Jacksonville,* 15 Ill. 241; *Phips* v. *State,* 7 Blackf. 542; 2 Rhode Island, 112.

*T. B. Reardan,* for Respondent, cited: 20 Wend. 111; 22 Id. 425; 2 Johns. 424; 6 Pet. 436; 8 Wend. 105; 3 Kent's Com. 555.

BALDWIN, J. delivered the opinion of the Court—COPE, J. and FIELD, C. J. concurring.

This is an action of trespass for entering upon plaintiffs' land and removing gates, etc. The particular piece of land entered was the bed of an old road, which had been used as a highway; and the defendant justified, as overseer of this road—which he claimed to be a public road of Yuba County—the removing of the gate as an obstruction. The title to the land was in the plaintiffs by deraignment from the grantee of a Mexican grant; and the main question in dispute on the trial was the question

of fact whether this land in controversy had been dedicated to the public as a highway.  As the facts are, for the most part, undisputed, it is not necessary to consider separately the various rulings of the Court, or the points made by the counsel; but we may proceed at once to consider the case upon its legal merits, as the record discloses them.

It is necessary to give a general outline of the facts, in order to apply to the case the legal principles involved.  The *locus in quo* is on what is called Dry Creek Bottom, which is about a mile wide.  In 1849 it was wild land, and supposed to belong to the government.  It was claimed, however, as a part of the Johnson grant, which has been finally located so as to include it—though none of the grantholders, until recently, had been able to get possession, the grant being, for the most part, taken up and fenced in small quantities by settlers claiming adversely to the grant, under the pre-emption laws, or as if it were public land.  In 1849 the travel along this road went on this track, but not all of it on the precise line marked by this road.  The land being uninclosed, travelers followed the course they designed to pursue without especial reference to any precisely defined limits.

The road or track was changed by the several settlers, who made their fences and fields without much respecting the track as they found it.  The vicinity has numerous old roads crossing fields in all directions.  Findley, a witness for defendant says : "I have known the road since Oct. or Nov. 1849 ; it crossed Johnson's Ranch at that time; I think the road did not run then as now; though it followed the same general direction, but in different tracks ; old road went through where Head's field was afterward inclosed.  When Loftin purchased, he made a second field and turned the road a second time.  Travel went pretty much where it had a mind to through the open plain." I. C. Woods says: " They shifted during the time I lived with Findley; was shifted from time to time; generally kept the old track; the roads were not confined to any particular track."  This is the effect of the testimony of several other witnesses for the defendant.  One of the witnesses for the plaintiff says that "the travel went by tracks across the bottom for the last five or six years."  It is true, that Judge Woodruff, one of the owners of the Johnson grant, says he considered this a public road or high-

way. So, in a sense, it was—that is to say, it was used as a road by those traveling that way. But, on the cross-examination Woodruff says expressly, that he did no act, and said no word intended or having the effect to make a dedication of this land to the public. The whole purport of his testimony is, that the track or tracks were used by the public as a road. But even if one tenant in common could make a dedication, any more than any other disposition of the common land, the peculiar circumstances of this case deny this effect to his conduct or acts— such as they were. The land was in the possession of settlers claiming it to be public land. The grantees were in no condition to resist even the claims of private persons, much less of the public; and it is not certain, as the government had to locate the grant, and as the question of its validity was in controversy between the government and the grantees, that the final adjudication would give the land to the claimants. We do not attach very much importance, therefore, for reasons which will be more fully given hereafter, to the mere acquiescence in the use, or rather, the passive submission of these claimants to the use, of the road. But Woodruff and others afterward sold this land, and made no reservation of this road; and other acts and declarations are given which seem inconsistent with any dedication by Woodruff or his associates. On the 8th May, 1855, the Board of Supervisors of Yuba County made an order as follows: "It is this day ordered by the Board, that all roads now traveled by wagons and pack mules, within the limits of Yuba County, be, and the same are hereby, declared public highways." This order was given in evidence against the plaintiffs' objection. It is very true, as the Appellant's counsel argues, that so compendious a process of appropriating the land of others to public purposes, as might be implied from the general terms of this order, may not be conformable to the constitution and law; and, therefore, that this order, considered as a basis of title in the public to this land may not be valid. But still, the evidence was not, perhaps, objectionable for all purposes. It might, in connection with other proof, be admissible to show a control on the part of the county of this road, and a knowledge of this control over it, as a public highway, on the part of the owners, and thus furnish a circum-

stance, as will be more fully explained hereafter, from which a dedication may be inferred.

It seems that Johnson conveyed this ranch, in 1857, to one Robinson, with whom Woodruff was interested. Johnson, at the time of the deed, was in the Sandwich Islands. Robinson conveyed in 1858, to the predecessor of plaintiffs, who, afterwards conveyed to them. There seems to have been no positive recognition by the present plaintiffs or their immediate predecessors of this asserted right; but, on the contrary, there is some proof of claim to the land, as their property. No working of the road by the overseer or the public, appears to have been done at this point.

The general question now arises, what constitutes a dedication of land for the purpose of a rural highway? We qualify the proposition by the latter words, because it is held by authority and upon reason, that it requires stronger proof of dedication in the cases of roads in the country, than that of streets or lanes in a town or city. (*Stacy* v. *Miller,* 14 Mo. 478; *Badeau* v. *Mead,* 13 Barb. Sup. Ct. 828; *Henins* v. *Smith,* 11 Met. 241.) In Angell on Highways, 127, Sec. 151, it is said: "An intention to dedicate must be obvious, and the same acts which would warrant the inference in cities and towns, would be quite insufficient in sparsely settled agricultural districts."

In dedication no particular formality is necessary; it is not affected by the Statute of Frauds; it may be made either with or without writing, by any act of the owner; such as throwing open his land to public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate; or an acquiescence in the use of his land for a highway, or his declared assent to such use, will be sufficient; the dedication being proved in most, if not all, of the cases, by matter *in pais,* and not by deed. The vital principle of the dedication, is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. Time, therefore, though often a very material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. If accepted and used by the public in the manner intended, the dedication is complete—precluding the owner and all claiming in his right,

from asserting any ownership inconsistent with such use. Dedication, therefore, is a conclusion of fact, to be drawn by the jury from the circumstances of each particular case; the whole question, as against the owner of the soil, being, whether there is sufficient evidence of an intention on his part to dedicate the land to the public use as a highway.

As to the *quantum* and kind of evidence of this intention, the authorities are numerous, and not all of them consistent. But the law is reasonable in this respect, as in most other matters. The peculiar circumstances of the country must be taken into account. While the general rule here is the same as in England, the facts which are held sufficient there, might be held differently in this State. Indeed, in other new States of the Union, they have been so held. In *Warner* v. *Jacksonville*, (15 Ill. 241,) it was attempted to infer a dedication of a road over lands uninclosed, and in common. The Court said: "The use and occupation of this portion is only about seven years, without any proof of assent or dissent. While so much land lying in common in this country remains free to public uses and travel, until circumstances induce owners to inclose, we can deduce no strength of inference or conclusion from mere travel across it by the public, without objection from the owner. It is neither the temper, disposition, fashion, or habit, of the people, or custom of the country, to object to the community enjoying such privileges until owners wish to inclose." In *Phipps* v. *The State*, (7 Black. 512,) it was held, that there was no presumption of dedication against the United States of its public land for a road, and where a party purchased and afterwards built a fence across the road, he was justified.

In *Stacy* v. *Miller*, (14 Mo. 478,) it was held that the bare fact that a farmer opens a lane through his farm, and allows the public to use it for fifteen years, does not authorize the inference of a dedication to the public. The intent to dedicate must be obvious. The Supreme Court of New York, in *Badeau* v. *Mead*, (14 Barb. S. C. 339,) observe: "The doctrine of dedication has been carried quite far enough, and ought not to be extended. Persons who have, from mere kindness, suffered others to enjoy privileges in their lands, have been eventually coerced into parting with them entirely, without compensation, and to yield up

Harding *v.* Jasper.

as rights what they had previously suffered or allowed as favors, and the simple expression of an intention, has often been distorted into a positive promise, and occasionally to those who have no distinct interest in its performance.  Our title to our lands is too important to be lightly lost, upon slight presumptions.  Before the owner should be deprived of his property, his intention to part with it should be clearly and unequivocally expressed.  And for greater certainty it would be better, far better, that to be effective, it should be evinced by writing, rather than by doubtful conduct, or still more doubtful declarations."

In *Irwin* v. *Dixon et al.* (9 How. 31,) the whole doctrine of dedication is discussed with great learning.  Mr. Justice Woodbury delivered the opinion of the Court, and said:  "But the dedication must also be under such circumstances as to indicate an abandonment of the use exclusively to the community by the owner of the soil.  (4 Camp. N. P. 16; 1 Id. 262; 11 East, 370; 3 D. & E. 265; *Jarvis* v. *Dean*, 3 Bing. 447; 22 Pick. 75.)  Hence, there must not have been, as here, repeated declarations, made by the owner, inconsistent with any dedication."  (7 Leigh, 546, 665; *Sinett* v. *Wilson*, 3 Bing. 116.)

· Nor must the acts and words be equivocal or ambiguous on that subject.

In short, the idea of a dedication to the public of a use of land for a public road, must rest on the clear assent of the owner, in some way, to such dedication.  (*Nichols* v. *Aylor*, 7 Leigh, 546; *Jonson's Case*, 8 Adol. & Ellis, 99; 1 Hill, 189, 191; 19 Wend. 128; 3 Bing. 447; 1 Camp. N. P. 262; 6 Pet. 431; 3 Kent's Com. 448; *Sargent* v. *Ballard*, 9 Pick. 265.)  This assent may be proved by a deed or unsealed writing, expressing such assent, or, as no fee in the land, but only an easement generally is given, it may be by parol or by acts inconsistent and irreconcilable with any construction except such consent.  (6 Pet. 435; 10 Id. 712; 3 Kent's Com. 428, 450; 7 Johns. 106; 2 Pet. 508; 12 Wheat. 582; 9 Cranch, 331; 4 Paige, 510; 12 Wend. 172; 19 Pick. 406; 4 Mas. 1.)

- - -  "In order to have a use or occupation accomplish this, it must have been adverse to the owner, (3 Kent's Com. 444,) whereas, this was by his consent.  It must, also, have been an exclusive use by the public, whereas, this was, in common with

42

him for travel, and entirely in him for several purposes of a private character. It must have been, also, acquiesced in by the owner, and not contested and denied, as here. (*Nichols* v. *Aylor*, 7 Leigh, 547.) It should, likewise, in that event, have been treated by the public authorities as a highway in connection with the uses and occupation, so as to give notice it was meant to be so claimed; whereas, this was not repaired by the city, nor left untaxed to the owner, as in other cases of public roads."

The latter portion of the doctrine here intimated has recently received the support of the Court of Errors and Appeals of Mississippi, in the case of *Tegarden* v. *McBean & Kibbee*, (33 Miss. 289,) in which it was held that there could be no dedication of a road until the Board of Police adopted the road as a public highway, and brought it by their action, within their jurisdiction. It is not necessary to consider whether the general order of the Board of Supervisors of Yuba County fulfilled this requisition, though, probably, it would vex the ingenuity of the counsel for Respondents to establish the proposition. But we pass it by, preferring to rest our decision upon more general grounds.

When we apply the principles already asserted, to the facts, the result is obvious. It cannot, with reason, be said, that there ever was any clear and unequivocal assent or acquiescence in the use of the road by the public as its own, on the part of any of the owners. The fact that Johnson knew the road was traveled by the public, the land being uninclosed, waste land, is nothing. He was not bound to fence in his own tract in order to rebut a presumption of dedication of a small part—nor were Robinson and Woodruff his successors. Under the decisions of this Court, prior to the time of plaintiffs' purchase, probably no action could have been maintained against those who were living on the land in defiance of the title of the owner, much less an action for trespass for traveling over it. The property was in litigation, as to the right and as to the boundaries, between the Federal Government and the claimants; and, by statute, the claimants were permitted to wait until after a patent without prejudice to their right of action from lapse of time. This strip of land was of little value, compared to the expense of litigating about it; and it would be just as unreasonable to suppose that the owners meant to abandon it to the settlers upon it, because the owners did

not sue before their title was perfected, as that they meant to abandon the right to this road, or to these various roads, to the public, because they permitted a portion of the public to travel over it.  We see no other proof of a dedication.  Even if Wood- ruff, not at that time having the fee, supposed—for that is all he says in effect—that the road was a public highway, and even if he meant by that expression that it belonged to the public, we do not see how his mere supposition, under the circumstances, would be conclusive of his own rights, still less of the rights of Robinson, who held the title.

But it is unnecessary to pursue the subject further.  We think there was no sufficient evidence of dedication shown, and that the verdict should be set aside and a new trial had upon the principles of this opinion.

Ordered accordingly.