[No. 11769. In Bank. — October 9, 1889.]

## THE PEOPLE, Respondent, v. E. P. REED et al., Appellants.

Street — Dedication — Finding — Argumentative Conclusions. — When a general finding in favor of a dedication of a street is expressly made as an argumentative conclusion from the acts, facts, and matters before specifically found and recited, and is by its terms based entirely upon such specific findings, which do not support the conclusions as to the dedication, a judgment based upon the finding of dedication should be reversed.

Id. — Marking of Street upon Unrecorded Map — Non-user. — The mere marking of a street upon an unrecorded map of a town or city plat does not constitute a dedication by the owner, if the street was not actually opened and accepted by public user, and no sale of lots was made thereon, but the same remained inclosed and occupied by substantial and permanent buildings for more than twenty years prior to any attempt by the municipal authorities to declare the street dedicated to public use.

Id. — Offer of Dedication — Sales with Reference to Map. — Estoppel. — There is no offer of dedication to the public by the mere making of a map which is not filed for record, and the rights of private individuals who may purchase with reference to such map must rest wholly upon the ground of estoppel. Such individuals as purchased upon faith of the representation of the street upon the map may compel the opening of the street; but if they do not, the public has no ground of complaint. An offer of dedication to the public may be withdrawn before the public accepts the offer, and the mere making of sales of lots with reference to such map does not constitute an irrevocable dedication to the public, if the street remains unopened.

Id. — Acceptance of Dedication — Reasonable Time. — An acceptance of an offer of dedication of a street must be made either by user or some formal act of acceptance within a reasonable time. An acceptance more than twenty years after the offer of dedication, the owner having meanwhile resumed and held possession of his property, is too late.

Appeal from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion of the court.

*William Matthews*, for Appellants.

*Attorney-General Johnson*, and *D. W. Herrington*, for Respondent.

WORKS, J.—This action was brought by the people on the relation of the mayor of the city of San José against the appellants, to declare a certain strip of land to be a public street of said city, to compel the appellants to remove certain buildings therefrom, and to enjoin them from maintaining said obstructions, and from setting up any claim of right to maintain the same thereon.

There was a judgment in favor of the plaintiff in the court below, and the defendants have appealed on the judgment roll.

The sole question in the case is, whether this strip of land had or had not been dedicated by the defendants, or either of them, to the public as a highway, and this question we are called upon to determine from the facts as they appear in the findings.

On this question the court finds:—

"6. That in March, 1862, the defendant E. P. Reed was the owner in fee of the lands, and the title thereto, designated by the red and blue lines shown on the map, marked 'Exhibit A,' city of San José, a copy of which is hereto attached and made a part of these findings.

"7. That in March of said year 1862, said defendant E. P. Reed caused said lands within said red and blue lines to be surveyed by Charles T. Healey, who was then the city surveyor of said city of San Jose, and, with the other lands indicated upon said map, to be subdivided and platted into streets, lots, and blocks, and a map thereof to be made upon a scale of 200 feet to the inch; and of which said exhibit thereto attached is a true copy.

"8. That upon said survey and map the street designated Divine Street thereon was laid down as a thoroughfare and street marked thereon 'Divine Street,' extending from the west line of First Street, as shown on said map, to the east line of Terraine Street, extending in length from First Street, westerly, a distance of about 1,050 feet, and being 60 feet in breadth throughout."

So much of the map as includes the lands referred to in said findings as being included within the red and blue lines is as follows:—

NOTE. — In the above diagram the red line is represented by dots, and the blue line by short dashes.

The whole length of Divine Street, as delineated on the map, appears on the part we have set out. The particular part of said street sought by this action to be opened lies between blocks VI. and VII., and extends from San Pedro to Market Street, a distance of one block.

The court further finds that said map was never recorded, but about twenty-five copies thereof were litho-

graphed in said year 1862, and were by the appellant
E. P. Reed exhibited to divers persons interested in the
sale or purchase, or in some way connected with the
transfers, of lands and lots in said city within the boun-
daries of the map, but gave instructions that the same
should not be recorded; that the lands included in said
map outside of the red and blue lines were the property
of others than the said Reed, and their consent was not,
and could not be, obtained to the subdivision and map-
ping of the same, and had not since been obtained; ex-
cept that persons owning Divine Street east of Market
and west of San Pedro Street threw the same open to
public use according to said survey and map, and those
interested in that portion of San Pedro Street from
Dame Street southerly to San Augustine Street, and that
portion of Market Street deeded to the city of San José,
were thrown open to the public use as streets in con-
formity to the map, and have ever since been and yet
remain public streets under the charge of said city; "that
in the year 1863, with the consent of said E. P. Reed
and others interested as owners in the lands, and by and
with the consent of the mayor and common council of
said city, the course and direction of said North Market
Street was changed from the direction indicated by the
space lying between lands surrounded by the red lines
and land surrounded by the blue lines on exhibit A,
to conform said Market Street to said survey and map,
and plan of streets, lots, and blocks as surveyed by said
Healey, and the same has ever since continued to be the
established route and direction of said Market Street;
"that First and Julian streets, as laid down on said
map, were established, open, public streets of said city
for more than two years prior to said survey and mapping
of said lands of defendant E. P. Reed; that all other
streets shown upon said exhibit were for the first time
designated as streets when said survey and map were
made, as set forth in finding 11; that Market Street was

changed as to direction; that Julian Street did not extend west of Market Street."

The court further finds that the appellant E. P. Reed, after the making of said map, made various conveyances and leases of property, describing the same by reference to said map, describing it. Some of these conveyances were by reference to lots and blocks, but most of them were by metes and bounds, ignoring the lots, blocks, and streets; some of them were by metes and bounds, designating some of the streets as the boundary lines, and some of them conveyed parts of the streets as laid out in the map. Some, if not the most, of these conveyances seem to have been of property of which he had no title, but were included in the map. These conveyances included lots 9, 10, and 11 of block IV., and lot 8 of block V., all of which fronted on the street in controversy in this action, but not on that part of the street sought to be opened.

The court further finds that on the twenty-fourth day of December, 1867, the appellant E. P. Reed conveyed to his wife, Clarissa M. Reed, by metes and bounds, all of blocks VI. and VII. and that part of Divine Street lying between said blocks, which is the portion of said street in controversy in this action; that thereafter certain other conveyances were made by Reed and wife by metes and bounds, mentioning certain of the streets on said map as boundary lines, one of which was for a part of said block VI., but not bordering on the street in controversy; the title to said portion of Divine Street and the lands bordering thereon still remaining in Mrs. Reed until her death, and being by her will devised to her husband.

The court further finds that on the twelfth day of December, 1884, more than twenty years after said map was made, and after the portion of the alleged street in controversy had been conveyed to Mrs. Reed, and had been occupied by buildings and fences, the mayor and common council of said city of San José passed an ordi-

nance declaring that the strip of land in controversy *"be and the same is hereby dedicated and set apart to public use as a public street forever,"* and instructing the street commissioner to demand possession thereof, and if possession was given, to remove all obstructions therefrom, and throw the same open to public use as a street of said city, and directing the city attorney, if possession were refused, to institute proceedings to recover the same for the city as a public street.

It is also found that the owners of said strip of land claimed to be the owners thereof, free from any claim of the city or any of its inhabitants to use the same as a street.

In conclusion, the court below finds as follows:—

" 36. That by the acts, facts, and matters above found and recited, said premises above referred to and described were by said several parties dedicated as public streets of the city of San José, and were by the proper authorities of the city of San José accepted and received and used as public streets of the city of San José."

From the findings of fact the court concluded that the property in controversy had been dedicated as and was a public street of said city, and entered judgment accordingly.

This action was heard by this court, and decided in favor of the appellants, on the ground that the facts found by the court did not show a dedication. (*People* v. *Reed*, 20 Pac. Rep. 708.) A rehearing was granted. In their petition for a rehearing, it was urged upon us that we had overlooked or had not given sufficient weight to the thirty-sixth finding, which they claimed was a finding of the ultimate fact of dedication, and concluded the case on this appeal against the appellant, the appeal being on the judgment roll. And they now attempt to forestall any inquiry into the question whether the specific facts found constituted a dedication of the property in controversy as a street by the same contention. But

conceding that the finding is one of fact, or, as coun-
sel terms it, a "conclusion of fact," it is apparent that
the court below did not intend to cut off the right of the
appellant to test the sufficiency of the specific facts
found to show such dedication in the manner indi-
cated. This finding is based upon the other facts
found. It recites in terms that "*by the acts, facts, and
matters above found*, said premises were by said parties
dedicated," etc. It may be that if this finding had stood
alone, and had not been put in this argumentative form,
it might have been upheld as a sufficient finding of an
ultimate fact. But this cannot be so where the facts
are fully found, and the general finding of a dedica-
tion is expressly drawn as a conclusion from such facts.
Counsel say it does not appear that the court found all
of the facts proved. But it does appear from the find-
ing itself that it was based entirely upon the facts found,
and not, in whole or in part, on facts proved but not
found. Therefore, if the specific facts found do not sup-
port this one, which is a summing up of the others, the
judgment should be reversed.

We pass, therefore, to a consideration of the question
whether the facts found show a dedication. In doing
so, it must be borne in mind that the map made of the
property was never recorded; that the part of the alleged
street in controversy was never opened as a street, but
for many years had been fenced and occupied by sub-
stantial and permanent buildings; that no sales of lots
thereon were ever made; that there is no finding that any
of the individuals who purchased property on other parts
of the alleged street had ever seen the map of the prop-
erty, or had any information at the time they purchased
that a street was laid out at the place in controversy, and
that no action was ever taken by the city for more than
twenty years after the map was made and the property
inclosed and permanently improved.

In an early case this court said: "In dedication, no

particular formality is necessary. It is not affected by the statute of frauds. It may be made either with or without writing, by any act of the owner, such as throwing open his land to public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate; or an acquiescence in the use of his land for a highway, or his declared assent to such use, will be sufficient; the dedication being proved in most, if not all, of the cases by matter *in pais,* and not by deed. The vital principle of the dedication is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. Time, therefore, though often a very material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. If *accepted and used by the public in the manner intended,* the dedication is complete,—precluding the owner and all claiming in his right from asserting any ownership inconsistent with such use. Dedication, therefore, is a conclusion of fact to be drawn by the jury from the circumstances of each particular case; the whole question, as against the owner of the soil, being whether there is sufficient evidence of an intention on his part to dedicate the land to the public use as a highway." (*Harding* v. *Jasper,* 14 Cal. 647.)

It is well settled by the decisions of this court that the *making* and *filing* of a map, designating certain streets thereon, is only an offer to dedicate such streets to the public, and that the dedication does not become effectual and irrevocable until the same is accepted by the public. (*Hayward* v. *Manzer,* 70 Cal. 476; *Harding* v. *Jasper,* 14 Cal. 647; *Sanderson* v. *Calderwood,* 31 Cal. 588; *San Francisco* v. *Canavan,* 42 Cal. 552; *People* v. *Williams,* 64 Cal. 502.)

But it is not the mere making of the map, or its delivery or exhibition to private individuals, that constitutes the offer of dedication to the *public,* but the *filing;*

and where the right to claim the street by the public rests *upon the map alone,* there is no offer to be accepted until the same is filed for record.

It may be otherwise with private individuals who have purchased some of the property on the faith of the map designating the streets, but this must be solely on the ground of estoppel, resting upon the representations made whereby parties have been induced to purchase on the faith of the implied statement that the designated streets were to be and remain open for public use. Such individual purchasers may, if it be shown that they acted on such representations, compel the opening of the streets, but if they do not, the public has no ground of complaint. No dedication or offer of dedication has been made to the public, and it is not an interested party.

It is conceded by counsel for respondent that the portion of the street in controversy "has never been opened as a street," and that "on it the defendant had maintained a barn and shed and kept it inclosed with substantial fences for more than twenty years before this suit." They take the position, however, that where the owner surveys and plats his property, and *makes sales of lots with reference to such plat,* the streets designated thereon are irrevocably dedicated to the public as streets. There are authorities sustaining this position. (*Bartlett* v. *Bangor,* 67 Me. 464; *Carter* v. *Mason,* 4 Or. 339; *Stone* v. *Brooks,* 35 Cal. 494; *Grogan* v. *Hayward,* 6 Saw. 498; Dillon on Municipal Corporations, 3d ed., sec. 640.)

But it is manifest that no such rule can prevail in this state, where it has been uniformly held that the owner may, at any time before his offer of dedication is accepted by the public, withdraw the same. As between him and the public, therefore, his act alone is not sufficient to constitute an irrevocable dedication. As we have said, it may be different as between him and private individuals to whom he has made sales of property with reference to the map. Much of the confusion in the decided

cases has, in our judgment, grown out of the failure to distinguish between the right of the public authorities to claim a dedication and the right of a purchaser to compel the opening of a street on the ground of estoppel. (*Holdaw* v. *Trustees etc.*, 21 N. Y. 474; *Child* v. *Chappel*, 9 N. Y. 257.) In the case of *Grogan* v. *Hayward*, 6 Saw. 498, relied upon by the respondent, which was an action by a private individual, this distinction is clearly made. If the purchaser of property asserts his rights, the result may be the same, as to the mere keeping open of the street, as if a dedication is claimed by the public; but it does not follow that if he waives his right, the public can assert it, nor can the purchaser, by asserting his right to an open way, impose on the public the duty of keeping a street in repair that has never been accepted.

The case of *San Leandro* v. *Le Breton*, 72 Cal. 172, seems to overlook this plain distinction between the right of a purchaser and the public, but there it appeared that there was an acceptance by the public authorities, so that, so far as the opinion can be construed as militating against the rule above laid down, it is a mere *dictum*, and should have no weight.

Therefore, conceding that a platting of property and sale of lots constitutes a dedication, as between the owner and purchasers under him, of the streets delineated on the map, in order to constitute a dedication which can be taken advantage of by the public authorities of a city, the offer of dedication must have been accepted by such authorities, either by user or some formal act of acceptance. (*Harding* v. *Jasper*, 14 Cal. 647; *Hayward* v. *Manzer*, 70 Cal. 476; *Sanderson* v. *Calderwood*, 31 Cal. 588, *San Francisco* v. *Canavan*, 42 Cal. 552; *People* v. *Williams*, 64 Cal. 502; *City of Galveston* v. *Williams*, 69 Tex. 449; *State* v. *Trask*, 6 Vt. 355; 27 Am. Dec. 554, 563; *Gilder* v. *City of Brenham*, 67 Tex. 345; *Cook* v. *Harris*, 61 N. Y. 448; *Briel* v. *City of Natchez*, 48 Miss. 423; *Field* v.

*Manchester*, 32 Mich. 279; *Hamilton* v. *Chicago*, 124 Ill. 235; *Fisk* v. *Town of Havana*, 88 Ill. 208.) Numerous other cases to the same effect might be cited.

Such acceptance must be within a reasonable time after such offer of dedication, and if not accepted, the owner may resume the possession of the property and thereby revoke his offer. (*Hayward* v. *Manzer*, 70 Cal. 476; *State* v. *Trask*, 6 Vt. 355; 27 Am. Dec. 554, 566; *Field* v. *Manchester*, 32 Mich. 279; *County of Wayne* v. *Muller*, 31 Mich. 447.)

In this case there was no use of the street, and no attempt to accept the dedication by formal act of the public authorities for more than twenty years. This was not within a reasonable time, as shown by the authorities cited above, and therefore came too late. But if this were not so, we think the ordinance passed by the common council of the city was not in any sense an acceptance of the dedication. It did not refer to the appellant or his alleged dedication of the street. As was well said in the former opinion, it appears more like an attempt to take private property for public use without compensation than an acceptance of the street.

There was neither a dedication to nor an acceptance by the public in this case. (*Littler* v. *City of Lincoln*, 106 Ill. 353; *Kennedy* v. *Mayor etc.*, 65 Md. 514.)

Judgment reversed, with instruction to the court below to conform its conclusions of law to the views expressed in this opinion, and to render judgment on the findings in favor of the defendant.

McFARLAND, J., SHARPSTEIN, J., FOX, J., PATERSON, J., and BEATTY, C. J., concurred.

THORNTON, J., dissented.