[No. 13351. In Bank. — December 11, 1889.]

## EDWARD PHILLIPS, APPELLANT, *v.* EDWIN DAY, RESPONDENT.

DEDICATION — PLATTING OF STREETS ON MAP — ACCEPTANCE BY PUBLIC. — The platting of land which lies outside of town limits, upon an unfiled map designating lots and streets, does not constitute a dedication of the streets to the public, if the land remains fenced, and no part of it is used by the public as a highway, and there has been no acceptance thereof by the public authorities.

ID. — QUESTION OF INTENTION. — The question of dedication is purely one of intention, and the intention of the owner must be gathered from his acts and conduct with reference to the property.

ID. — REVOCATION OF OFFER TO DEDICATE — DEED — FILING OF MAP. — An offer to dedicate streets to the public by platting the same upon an unfiled map of lots and streets is withdrawn by a subsequent sale of the whole property in a body under a deed thereof omitting the designation of streets, before any acceptance or user of the streets by the public; and a subsequent filing of the map will not affect the rights of the grantee.

VENDOR AND PURCHASER — CONTRACT OF SALE — SPECIFIC PERFORMANCE — DEFECTIVE TITLE — BURDEN OF PROOF. — To avoid a specific performance of a contract to purchase land on the ground of defective title, where the vendor has a clear paper title to the property, the burden of proving a defect in the title because of an alleged dedication of part of the land as public streets is on the purchaser.

ID. — PRESCRIPTIVE TITLE OF VENDOR — STATUTE OF LIMITATIONS — RIGHTS OF PURCHASERS BOUNDING ON STREETS — BURDEN OF PROOF. — In an action involving the specific performance of a contract for the sale of land which is resisted by the purchaser on account of the alleged dedication of streets upon the land, where it appears that the alleged streets never vested in the public, and that the property had been conveyed in a body, including such alleged streets, and fenced and occupied for more than five years before the agreement to convey the property, the right of prior purchasers bounding on the streets to use the same, if it ever existed, is barred by the statute of limitations, and it is incumbent upon the purchaser to prove the existence of any circumstances which would have prevented the running of the statute of limitations, as against these purchasers, in order to avoid a specific performance of his contract to purchase the land; and in the absence of such proof, the facts show such title in the vendor that the purchaser is bound to accept a conveyance and pay the purchase-money.

ID. — REASONABLE DOUBT AS TO TITLE. — A purchaser of land cannot justify his refusal to perform his contract by a mere captious objection to the title tendered him, nor is it sufficient for him to raise a doubt as the vendor's title. There must be at least such reasonable doubt as affects its value, and would interfere with its sale to a reasonable purchaser.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*George Lezinsky*, for Appellant.

The title is not free from reasonable doubt, and the purchaser cannot be compelled to take. (Fry on Specific Performance, secs. 573, 574, 576, 579, 580; *Adams* v. *Valentine*, 33 Fed. Rep. 1; *Jeffries* v. *Jeffries*, 117 Mass. 184; *Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234; 6 Am. Rep. 70; *Dobbs* v. *Norcross*, 24 N. J. Eq. 330; *Swayne* v. *Lyon*, 67 Pa. St. 439; *Griffin* v. *Cunningham*, 19 Gratt. 571; *Turner* v. *McDonald*, 76 Cal. 177.)   A sale of lots bounding on streets constitutes an immediate and irrevocable dedication of the streets, binding on both vendor and vendee.   (Dillon on Municipal Corporations, 3d ed., secs. 640, 642; *Schneider* v. *Jacobs*, 86 Ky. 101; *Chapin* v. *Brown*, 15 R. I. 579; *Fulton* v. *Dover*, 6. Atl. Rep. 633; *Carter* v. *Portland*, 4 Or. 339; *Portland* v. *Whittle*, 3 Or. 126; *Rowan* v. *Portland*, 8 B. Mon. 238, 239; *Dovaston* v. *Payne*, 2 Smith's Lead. Cas. 224; *Wyman* v. *Mayor etc.*, 9 Wend. 487; *Oswald* v. *Grenet*, 22 Tex. 94; *San Leandro* v. *Le Breton*, 72 Cal. 160, and cases cited.) The statute of limitations cannot apply.   (*San Leandro* v. *Le Breton*, 72 Cal. 160; *Hoadley* v. *San Francisco*, 30 Cal. 265; *People* v. *Pope*, 53 Cal. 437.)   The title must be fairly deducible of record, without resort to parol proof.   (*Turner* v. *McDonald*, 76 Cal. 177.)

*J. A. Barham*, and *McGee & Barham*, for Respondent.

The alleged streets never having become public streets, an adverse holding under a conveyance of the property for more than five years is of itself such title as a purchaser must take. (Code Civ. Proc., sec. 322; *Cahill* v. *Palmer*, 45 N. Y. 481, 485; *Shriver* v. *Shriver*, 86 N. Y. 581; *Hellseigel* v. *Manning*, 97 N. Y. 59, 60; *Seymore* v.

*De Lancey*, Hopk. Ch. 436.)    An offer of dedication under
a map is not a dedication if not accepted by the public,
and may be revoked.  *Hayward* v. *Monzer*, 70 Cal. 476;
*People* v. *Reed*, 81 Cal. 70.)

Works, J. —The facts of this case, and the questions
presented and tried in the court below, are thus stated in
the opinion of the learned judge of the court below,
which is set out in the transcript:—

"In this case the plaintiff and defendant, on the thirty-
first day of August, 1887, entered into a contract in writ-
ing, by which defendant bound himself to sell to plaintiff,
and plaintiff bound himself to purchase, a tract of land
known as the John Fulkerson place, for the sum of
eight thousand dollars; 'five hundred dollars to bind
bargain, and two thousand dollars at expiration of sixty
days, the balance in one or two years,' secured by
note and mortgage on the property.    Upon the making
of the contract, the plaintiff paid to the defendant the
sum of five hundred dollars, and on the twentieth day of
September thereafter paid the further sum of seven
hundred dollars.    An abstract of the title was furnished
to the plaintiff, and upon submitting the same to his
attorney, plaintiff declined to perform his part of the
contract, on the ground that defendant could not give
him a perfect title, and after such refusal, commenced
this suit to recover the money which he had paid.    De-
fendant answers, and by way of cross-complaint insists
on plaintiff specifically performing his contract.

"It appears, from the evidence, that the land bargained
for is a part of a larger tract, once the property of Richard
Fulkerson, who got title from the grantee of a Mexican
grant.    The property was fenced and cultivated by Ful-
kerson for more than thirty years.    He conveyed it to
James B. Armstrong, and put him in possession.    Arm-
strong laid it off into streets, blocks, and lots.    The streets
were marked on the ground, and the one on which the land

bargained for is situated was graded and graveled, but the fence inclosing it with the rest of the larger tract was never removed by James B. Arr strong or Walter Armstrong, his successor in interest. Where this graveled street intersects the public highway leading from Santa Rosa to Healdsburg a gate was put in, but kept closed, and the inclosure, by means of the gates and fences, was maintained. No opening of any kind was made where the street north of the property in question intersects the highway. There were two gates on two other streets. James B. Armstrong, while he was owner, sold three of the lots, but none of them on the graded and graveled street. He afterward sold and conveyed the balance of the tract to Walter Armstrong, who conveyed several of the lots; four, at least, of them being on the gravel street. After these conveyances were made, Walter Armstrong filed in the office of the county recorder a map or plat of the tract, which was called Norwood, showing streets, blocks, and lots, and on the same day conveyed all of the tract which he had not sold, to Richard Fulkerson. The conveyances from James B. Armstrong to Walter Armstrong, and from Walter Armstrong to Richard Fulkerson, recognized the map, but include the streets; the latter conveyance was filed for record about two hours after the filing of the map. A. W. Riley, who purchased from Walter Armstrong, went into possession, and erected a fence on the south line of the graveled street. It does not appear how many of the other purchasers from the Armstrongs went into possession, or to what extent they used the streets. John Fulkerson testified that some of them went into possession, and used the streets to get to their lots.

"That there were three gates, and that they had to pass through one of these gates to get to their premises. All of the lots which had been sold by the Armstrongs came back by regular conveyances to Richard Fulkerson or John Fulkerson, except that portion of the tract which

had been conveyed to J. H. Abshire, which, as delineated on the map offered in evidence by the plaintiff, consists of a part of lots 28, 29, 30, 31, and 32.

"It appears from this map that no part of his claim extended to or touches the graveled street, but does include the whole of so much of a street as ran near its westerly boundary, and takes a strip off the lots on the west side of that street. The evidence does not show that the general public ever used any of the streets, nor does it appear that there was any acceptance on the part of the county authorities. Richard Fulkerson, after he got the title back in himself, conveyed to John Fulkerson. In this conveyance no reference is made to streets. John Fulkerson conveyed a right of way over the south thirty feet of the graveled street to J. H. Abshire, and moved his fence, which had marked the south line of lot 3, which is a part of the land in controversy, to the middle of the street, and the north thirty feet of the graveled street was thereafter within the inclosure surrounding the land in dispute. This fence is now standing, and has been maintained for more than five years before the contract of sale was made. On the 14th of August, 1886, John Fulkerson conveyed to the defendant, by metes and bounds, making no reference to streets or to the map. This conveyance included a triangular piece of land on the north side of the Day tract, having the northeast corner of the tract for its apex, and about three feet on the Healdsburg road for its base, which had been previously conveyed by Fulkerson to Joseph Viles; but it appears, from the testimony, that Day had no actual knowledge, nor had Fulkerson, that the deeds overlapped. The triangle was within the inclosure of Day. On the north side of the tract described in the complaint is another street as laid down on the Armstrong map, and which, if it is a public highway, would take off another strip of thirty feet from the land bargained for.

"The plaintiff contends that both of the platted streets north and south of the land are public streets, and that if compelled to purchase he would lose a strip of thirty feet on the south and one of the same width on the north, and for this reason, and because the title to the triangle (which contains one fiftieth part of an acre), is not in Day, he should not be compelled to purchase."

The court below found for the defendant, and decreed in his favor that the plaintiff specifically perform the contract. There was a motion for a new trial, which was denied, and the plaintiff appeals.

The contention of the appellant in this court is, that there was a dedication of a part of the land to the public, to be used as public streets, or that the facts were such as to raise a reasonable doubt as to the defendant's title to so much of said lands as was covered by these alleged streets, and that for that reason he was not bound to accept a conveyance and pay the purchase-money for the land.

We have had occasion very recently to consider fully the question as to what is necessary to constitute a dedication of lands to the public for street purposes, by platting and selling lots by reference to the map thereof. (*People* v. *Reed*, 81 Cal. 70.)

Much that is said in the opinion in that case is applicable to this, and need not be repeated. The decision in the case referred to is conclusive against the appellant as to the alleged dedication to the public. There has never been any acceptance by the public authorities, and the offer to dedicate, if there ever was one, was clearly withdrawn by the subsequent sale of the property in a body, including that part designated on the map as streets.

As to the right of individual purchasers, it appears that they purchased before the map was filed; that all of them, except two, have reconveyed to the original grantor, or his grantees under a conveyance of the whole prop-

erty included in the map, except the parts previously conveyed; that the property here in controversy was and always remained fenced, and was in that condition conveyed by Armstrong, who had the same platted, in a body, including the alleged streets, more than a year before the map was filed; that one of these purchasers who has not reconveyed has expressly waived any right to have the streets on which his property fronts kept open, and the other did not purchase on the faith of the map, and his property does not touch any street that runs through or in any way affects the property in controversy.

The question of dedication is purely one of intention; and the intention of the owner or owners of the land must be gathered from his acts and conduct in respect to the property. (*Harding* v. *Jasper,* 14 Cal. 647; *People* v. *Reed, supra.*)

In this case the owner of the land at the time it was platted did not file the map. The land was not within the limits of any city or town; it was at that time and continuously thereafter remained fenced, and no part of it was used by the public as a highway. The filing of the map was, as we have said, after the conveyance of the lots was made and after the property had been conveyed in a body to a third party. The map was filed on the very day that the property was conveyed a second time in a body. As to that part of the lands involved in this litigation, the court finds: " That thereafter, in 1879, R. Fulkerson conveyed all of the lands reconveyed to him as aforesaid, by metes and bounds, ignoring the designations of streets and lots, as marked upon said map, to J. Fulkerson, and he thereupon entered into the possession of the whole thereof under said deed, claiming title thereto, exclusive of other right; and more than five years prior to the date of the agreement between plaintiff and defendant, inclosed the premises in the pleadings

described with a good and substantial fence, and the same has continued closed ever since."

Fulkerson conveyed the property to the defendant August 14, 1886. The agreement to convey to the plaintiff was made August 31, 1887, and this suit was commenced January 12, 1888.

No right to the alleged streets having vested in the public, and the property having been conveyed in a body, including the streets, and fenced and occupied for more than five years before the agreement to convey the property to the plaintiff, the right of any and all purchasers, conceding that they had any, was cut off and barred by the statute of limitations, and could not have been enforced. The defendant having proved a clear paper title to the property, the burden of proving a defect in the title for the reason relied upon in this case was upon the plaintiff; and if there were any circumstances which would have prevented the running of the statute as against any of these purchasers, it was incumbent upon the plaintiff, in order to avoid a specific performance of his contract, to prove their existence. (*Shriver* v. *Shriver*, 86 N. Y. 575.)

We think the facts show such a title in the defendant as that the plaintiff was bound to accept a conveyance and pay the purchase-money.

In *Hellreigel* v. *Manning*, 97 N. Y. 59, it was said: "The whole evidence left the case free from any reasonable doubt that the plaintiff's deed would convey a good title, and hence, notwithstanding the apparent defect in the chain of title as shown by the records, the defendant could not justly refuse to perform his agreement. A purchaser cannot justify his refusal to perform his contract by a mere captious objection to the title tendered him; nor is it sufficient for him, when the jurisdiction of an equity court is invoked to compel him to perform his contract, merely to raise a doubt as to the vendor's title. Before he can successfully resist per-

formance of his contract on the ground of defect of title, there must be at least a reasonable doubt as to the vendor's title, such as affects its value, and would interfere with its sale to a reasonable purchaser, and thus render the land unmarketable."

There is nothing in the evidence in this case sufficient to raise a reasonable doubt as to the defendant's title to the property. There was, in our judgment, no dedication of the streets, as to the purchasers, which could have been enforced by them at any time; but if there was, they had lost such rights by lapse of time.

Judgment and order affirmed.

Fox, J., McFarland, J., Paterson, J., Sharpstein, J., and Beatty, C. J., concurred.

Thornton, J., concurred in the judgment.

Rehearing denied.