[L. A. No. 551.    Department One.—August 12, 1899.]

N. S. NILES et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

DEDICATION OF STREET—INTENTION ESSENTIAL—INSUFFICIENT FINDINGS—PROBATIVE FACTS—USER OF WAY—LICENSE.—The intention of the owner of land to dedicate part thereof as a public street is essential to a dedication; and findings of mere probative facts, without the finding of a dedication or of an intent to dedicate, and which are not inconsistent with the absence of such intention, and may indicate a mere license to the public to use an open passageway for travel, without adverse user thereof by the public, are insufficient to establish the dedication of the way as a public street.

ID.—GENERAL FINDING.—A general finding that the way was a public street, placed among the conclusions of law, and evidently intended as a deduction from previous probative facts found, cannot prevail, if not sustained by the probative facts.

ID.—ADVERSE USER BY PUBLIC.—Where the dedication of a highway is sought to be established by user by the public, it must be shown that the user was adverse with the knowledge of the owner; and the user must be of such duration that the public interest and private right would be materially impaired if the dedication were revoked and the use by the public discontinued.

1D.—MAKING AND FILING OF MAP—OFFER OF DEDICATION—ACCEPT-
ANCE—REVOCATION.—The making and filing of a map desig-
nating certain streets thereon, is only an offer to dedicate such
streets to the public, and unless the offer is accepted by the
public within a reasonable time, the owner may resume posses-
sion and control of the property, and thereby revoke his offer.

1D.—INSUFFICIENCY OF EVIDENCE.—Evidence showing that since the
opening by adjoining owners of a strip used as a passageway,
it was cultivated by the owners almost every year, that fruit
and other trees were placed thereon by them, that taxes were
paid by them to the city upon the land, that on an assessment
map of another street the strip was shown to be private land,
and not a street, and was assessed to the owners thereof, and
that the strip had never been improved, graded, or accepted as
a street by the public authorities, is wholly insufficient to sup-
port a finding that the strip was dedicated or abandoned to
the public as a street.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.   J. W.
McKinley, Judge, rendering judgment.   M. T. Allen, Judge,
denying new trial.

The facts are stated in the opinion.

M. W. Conkling, for Appellants.

W. E. Dunn, for Respondents.

COOPER, C.—This action was brought by appellants to re-
strain the respondents from entering upon, taking possession
of, and removing trees, fences, and improvements from the real
estate described in the complaint.   The respondents in their an-
swer claimed that a certain part of the land described in the
complaint, about thirty feet wide off the eastern side thereof
running north and south, bounded on the northern end by
Washington street, on the south by Parcel's subdivision of the
John Thomas tract, and on the east by a line formerly the west
line of the lands of Reed and Snodgrass, constituted a part of
a public street, to wit, Trinity street, in the city of Los An-
geles.

Findings were filed and judgment rendered in favor of the
respondents as to the lands described in the answer. A motion
was made for a new trial and denied, and this appeal is from
the judgment and order.   The findings and conclusions of the
lower court were as follows:

"1. That in the year 1887 the plaintiff, William Niles, was the owner of a certain tract of land in said city of Los Angeles, including the strip of land in question in this action, which tract fronted on Washington street on the north, adjoined the John Thomas subdivision of the Parcel's tract on the south, and adjoined a tract of land belonging to one L. Snodgrass on the east.

"2. That in 1887, at a time when said William Niles and said Snodgrass were the owners respectively of said adjoining tracts of land, said Niles caused a fence to be built across his said tract of land running from Washington street to the south line of his said tract and on a line parallel with and thirty feet distant from the division line between the lands of Niles and Snodgrass, and at the same time said Snodgrass fenced his said tract of land, leaving outside of his said fence a strip of land about thirty feet in width adjoining for its full length said thirty foot strip which said Niles had left outside of his said fence; and that said two strips of land, having a total width of about sixty feet, were at said time thrown open to public travel by said Niles and Snodgrass, and have been ever since, until a few months prior to the bringing of this action, open to public travel without protest from plaintiffs or their predecessors in interest.

"3. That the strip of land, sixty feet in width and composed of the two thirty foot strips aforesaid, was in direct line with Trinity street, in said city, as it then existed, and as it now exists south of said tract of Niles and Snodgrass, and said sixty foot strip extends from Washington street south in direct continuation of said Trinity street.

"4. That ever since the building of said fences, in 1887, said sixty foot strip of land, including the land in question in this action, has been and was continuously used and traveled by the public as a public street of said city until obstructing fences were built by the plaintiff across the same a few months before the bringing of this action, and was during said time known as and called 'Trinity street.'

"5. That subsequent to the building of said fences, in 1887, William Niles made a conveyance of his said tract of land, and including the strip in question, to the plaintiff, N. S. Niles,

and thereafter, to wit, on August 6, 1894, the said N. S. Niles caused a survey of said property to be made and a map thereof to be recorded in the office of the county recorder of said Los Angeles county, on which map her said property is shown subdivided into lots and blocks only up to the line of said fence theretofore erected by said William Niles in 1887, the easterly line of said subdivision, as shown by said map, being substantially on the same line as the said fence.

"And as conclusions of law from the foregoing facts the court finds and decides: "1. That the land described in the complaint herein is a part of a public street of the city of Los Angeles, to wit, Trinity street; 2. That the restraining order, heretofore granted herein, should be dissolved; 3. That plaintiffs should take nothing by their said action, and that defendants recover their costs herein."

It is contended that the evidence does not sustain the findings, and that the findings do not justify the conclusions of law, and we think both contentions will have to be sustained. The stipulation contained in the statement on motion for a new trial shows that William Niles and John B. Niles owned the property described in the complaint in fee simple in the year 1880, and continued to so own it until February 4, 1888, when they conveyed it to the appellant, N. S. Niles. Findings 1 and 2, to the extent that they find that William Niles was the owner of the land in controversy in the year 1887, are, therefore, not supported by the evidence and in direct conflict with the stipulation of the parties as shown by the record. The acts of William Niles tending to show a dedication in the year 1887, and prior to February 4, 1888, at a time when he was not the sole owner of the land, in so far as they would or could in any way affect the rights of this appellant, N. S. Niles, cannot be considered in this case. We then have the findings remaining, to the effect that since 1887 until within a few months prior to the commencement of this action the land described in the answer has been open to public travel without protest from appellants, and has been continuously used and traveled by the public as a public street until a few months before bringing this action, and that on August 6, 1894, the appellant N. S. Niles made a survey and map of the portion of the property described in

the complaint other than that claimed in the answer to be a street, and said map showed lots and blocks up to the portion so claimed to be a street in said answer, said portion not being on the said map. There is no finding of dedication and no finding that the land in controversy is a public street, and we do not think the findings of the probative facts herein stated are sufficient of themselves to show the premises to be a public street. It is not found that the public, during the times it has traveled over the said land, claimed any right to so travel over it, or that appellants even knew of such travel. There is no finding that the public authorities of the city ever claimed the said land as a public street, or that they ever expended any money in improving or grading the same. The finding that the appellants caused a map to be made and filed of other land up to a fence along the west line of the strip in controversy is of little consequence. It is not claimed that the land in dispute was shown or platted on said map as a street, or that the map even included it. The title to the land is in appellant N. S. Niles, unless by clear and unequivocal acts she or her predecessors in interest have dedicated it to the public. The law does not allow the land of a private owner to be taken for public purposes without any conveyance or consideration, except upon proof of such facts and circumstances as clearly show an intention on the part of the owner to abandon or dedicate the land to the public. Section 2618 of our Political Code defines public highways as follows: "In all counties of this state highways are roads, streets, alleys, lanes, courts, places, trails, and bridges laid out or erected as such by the public or, if laid out or erected by others, dedicated or abandoned to the public, or made such in actions for the partition of real property."

There is no pretense that the land claimed to be a street was ever laid out or erected by the public, or that it was made such in any action for partition of real estate. It follows that it cannot be held to be a public street unless it has "been dedicated or abandoned" to the public by the owner of the land. In the early and leading cases on the question of dedication in this state it is said: "The vital principle of the dedication is the intention to dedicate; and whenever this is unequivocally

manifested, the dedication, so far as the owner of the soil is concerned, has been made. Time, therefore, though often a material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. If accepted and used by the public in the manner intended, the dedication is complete —precluding the owner, and all claiming in his right, from asserting any ownership inconsistent with such use. Dedication, therefore, is a conclusion of fact, to be drawn by the jury from the circumstances of each particular case; the whole question, as against the owner of the soil, being whether there is sufficient evidence of an intention on his part to dedicate the land to the public use as a highway." (*Harding v. Jasper*, 14 Cal. 648.)

To constitute a dedication of land to the public two things are necessary, to wit, an intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use, and an acceptance by the public of the dedication. (Elliott on Roads and Streets, 85; *San Francisco v. Canavan*, 42 Cal. 553; *Sän Francisco v. Calderwood*, 31 Cal. 585; 91 Am. Dec. 542; *People v. Reed*, 81 Cal. 70; 15 Am. St. Rep. 22; Washburn on Easements, 140, 239; *Child v. Chappell*, 9 N. Y. 246.)

This use must be of such duration that the public interest and private right would be materially impaired if the dedication were revoked and the use by the public discontinued. (*Cincinnati v. White*, 6 Pet. 431, 439; *San Francisco v. Canavan, supra.*)

The making and filing a map designating certain streets thereon is only an offer to dedicate such streets to the public, and the dedication does not become effectual and irrevocable until the same is accepted by the public. (*People v. Williams*, 64 Cal. 502; *Hayward v. Manzer*, 70 Cal. 476; *People v. Reed*, 81 Cal. 77; 15 Am. St. Rep. 22.)

Such acceptance must be within a reasonable time after offer of dedication, and, if not accepted, the owner may resume the possession of the property and thereby revoke his offer. (*Hayward v. Manzer, supra; State v. Trask*, 6 Vt. 355; 27 Am. Dec. 554; *Field v. Manchester*, 32 Mich. 279; *County of Wayne v. Muller*, 31 Mich. 447; *People v. Reed, supra.*)

The finding that the strip of land was traveled and used by the public since 1887 without protest from appellants or their predecessors in interest is only the finding of probative facts tending to prove dedication, but the fact of dedication does not necessarily follow from such probative facts, as they are not necessarily inconsistent with a total absence of intention to dedicate and may indicate a mere license. (*Cooper v. Monterey Co.*, 104 Cal. 438.)

Dedication is never presumed without evidence of unequivocal intention on the part of the owner. (*Quinn v. Anderson,* 70 Cal. 456.)

Where the dedication of a highway is sought to be established by user it must be shown that the user was adverse (*Huffman v. Hall*, 102 Cal. 30), and with the knowledge of the owner (*Hope v. Barnett*, 78 Cal. 14), and in this case there is no finding that the use was adverse or with the knowledge of the owner. It is claimed that under the portion of the findings termed "conclusions of law" the fact is found that the disputed premises are a public street. It has been held in many cases, in which the appellant sought to overthrow a judgment because of the absence of a finding, that a misplaced finding of fact placed in the conclusions of law will be considered to prevent the reversal of a case fairly tried or to prevent the setting aside of a judgment justly given. But in this case we have the finding of specific facts under five different headings, and finally "And as conclusions of law from the foregoing facts the court finds and decides: 1. That the land described in the complaint herein is a part of a public street of the city of Los Angeles, to wit, Trinity street." It is plain that this is a general statement or conclusion drawn by the court from the facts previously found. The rule in such cases is that the general finding cannot stand unless the specific facts previously found support it. (*People v. Reed, supra; Geer v. Sibley,* 83 Cal. 4; *Savings etc. Soc. v. Burnett,* 106 Cal. 540.)

As this case must be sent back for a new trial, it may be well for us to indicate our opinion on the evidence without regard to the findings. Conceding that William Niles was the sole owner of the land in 1887, at the time of the acts set forth in findings 1 and 2, and conceding that the court found the

facts of dedication and that the premises are a public street, we do not think the evidence would be sufficient to support the findings.    William Niles testified that the fence was moved back, leaving the strip in contest open during his absence in the east, and that since the fence was removed the ground has been cultivated each year.    That there are orange, pear, fig, and eucalyptus trees on the strip.    That taxes have been paid to the city upon the land for the years 1891, 1892, 1893, 1894, 1895, and 1896.    The witness Snodgrass, who owned the land immediately east of the strip in dispute in 1887, testified that he and William Niles talked it over between themselves and agreed to leave open a strip sixty feet wide, being thirty feet off the side of the land of each, for a passageway, and that it was so left for a passageway.    That it was not left for a street, and there was never any agreement to give the land for a street.    That after the fences were set back Niles continued to farm his land right up to the line, and that witness always paid taxes on his; that the city never exempted it from taxes and never curbed or graded it, and claimed that it was not a street.    No witness testified to any declaration made by any owner of the land of an intent to dedicate it for a public street.

Other witnesses testified that the strip had been in cultivation almost every year since 1887.    It appeared that after 1887 (no definite time is fixed) the city levied assessments for the improvement of Washington street, which runs east and west along the northern end of the strip, and made a map for the assessment of the improvements of Washington street.    On the map the strip was shown to be the land of Niles, and not a street, and was assessed to Niles.    The sidewalk was curbed along the south side of Washington street and along the thirty feet at the northern end of the strip.    It does not appear that the premises claimed to be a street have ever been improved, graded or accepted by the public authorities.

In our opinion the evidence wholly fails to show that the strip was ever dedicated or abandoned to the public as a street.

We advise that the judgment and order be reversed.

Britt, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Harrison, J., Garoutte, J., Van Dyke, J.